**Application of BARNES (two cases).**

**In re FALCONE.**

**Civ. Nos. 1494, 1495.**

United States District Court
N. D. New York.

Nov. 20, 1953.

pear at certain times and places for interview. The details of such interviews are not important except to note that Salvatore was more cooperative in the interview procedure than Joseph. He was asked to explain the reason for the use of the name Projelto by his parents when they entered the country and he answered he had no explanation because his father and mother were dead and he had always used and was known by the name Falcone. Joseph would not answer any questions when informed by the immigration officer that the reason for the interview would not be stated.

Anthony F. Caffrey, U. S. Atty., Syracuse, N. Y., for applicants. Herman I. Branse, Immigration & Naturalization Service, Buffalo, N. Y., on the brief.

Anthony S. Falcone, Utica, N. Y., for respondents.

FOLEY, District Judge.

These applications present a novel and important problem concerning administrative and investigative functions under the provisions of the Immigration and Nationality Act of 1952, 66 Stat. 163, 8 U.S.C.A. § 1101 et seq. The two separate applications are similar enough in factual background, nature and purpose to be discussed as one.

Joseph and Salvatore Falcone are naturalized citizens of the United States. Joseph Falcone assumed such status by an order of the Supreme Court of the State of New York, Oneida County, on February 18, 1925, and Salvatore Falcone was duly admitted to citizenship by order of the same court, dated July 21, 1925. The Falcones came into this country on December 8, 1907, with their parents, who are now deceased, and at the time of entry Joseph was four years of age and Salvatore was sixteen.

A short time previous to the issuance of the subpenas here in question, each respondent received letters from immigration officials requesting that they ap-

The result of this attitude on the part of the Falcones was the service upon them of separate subpenas, one signed by an officer-in-charge and the other by an acting officer-in-charge of the Immigration and Naturalization Service. Each subpena commanded them to appear on certain dates at the Federal Building in Syracuse, New York, to give testimony and make a statement before an officer of the service at the designated time and place, and further commanded each to produce and bring with them evidence of birth and original entry into the United States and naturalization certificate. Each subpena was entitled only "In re Salvatore Falcone" and "In re Joseph Falcone;" each subpena specifically stated that it was pursuant to the provisions of section 235(a) of the Immigration and Nationality Act. The respondents appeared pursuant to the subpenas and both refused to testify under oath, claiming that the subpenas were invalidly issued as against them because they were naturalized citizens and not aliens. Each produced for inspection their birth certificate and certificate of naturalization. Upon the return of the order to show cause, the respondents appeared specially, challenging the power to issue subpenas as against them under the terms of section 235(a) of the Act. At the hearing upon such return, the official records of the Oneida County Clerk were subpenaed into court by the respondents and disclosed that the certificate of ar-

rival or original entry demanded in each subpena are matters of official record as part of the naturalization proceedings and available to the immigration service, although not open, as I understand it, to public inspection.

The first contention of the immigration service in these applications is that the subpena power used against these naturalized citizens is authorized and delegated by the Congress in this particular part of the terms of 235(a) of the Act, 8 U.S.C.A. § 1225(a):

"The Attorney General and any immigration officer, including special inquiry officers, shall have power to require by subpena the attendance and testimony of witnesses before immigration officers and special inquiry officers and the production of books, papers, and documents relating to the privilege of any person to enter, reenter, reside in, or pass through the United States or concerning any matter which is material and relevant to the enforcement of this Act and the administration of the Service, and to that end may invoke the aid of any court of the United States."

The subsection concludes with the conferring of jurisdiction upon the district court to order compliance with such subpena.[1]

The second contention in behalf of the applications is that despite the express confinement of the subpena as "pursuant to the provisions of section 235(a) of the Act," the power to issue the subpenas here is implicitly authorized and granted by the terms of 287(b) of the Act, 8 U.S. C.A. § 1357(b), relating to powers of immigration officers and employees.[2]

Further, inasmuch as it is now frankly stated that the legality of the naturalization of the Falcones is under investigation, the subpena power is necessary in the investigation and report as to the institution of revocation proceedings in accordance with the regulations promulgated by the attorney general in the administration and enforcement of the Act in that respect.[3]

▮▮▮▮ These contentions create a question of statutory construction.

[1] "Any United States district court within the jurisdiction of which investigations or inquiries are being conducted by an immigration officer or special inquiry officer may, in the event of neglect or refusal to respond to a subpena issued under this subsection or refusal to testify before an immigration officer or special inquiry officer, issue an order requiring such persons to appear before an immigration officer or special inquiry officer, produce books, papers, and documents if demanded, and testify, and any failure to obey such order of the court may be punished by the court as a contempt thereof."

[2] Section 287(b). "Any officer or employee of the Service designated by the Attorney General, whether individually or as one of a class, shall have power and authority to administer oaths and to take and consider evidence concerning the privilege of any person to enter, reenter, pass through, or reside in the United States, or concerning any matter which is material or relevant to the enforcement of this Act and the administration of the Service; and any person to whom such oath has been administered, under the provisions of this Act, who shall knowingly or willfully give false evidence or swear to any false statement concerning any matter referred to in this subsection shall be guilty of perjury and shall be punished as provided by section 1621, of Title 18 [United States Code]."

[3] Sec. 340.11. Investigation and report. Whenever it appears that any grant of naturalization may have been procured by concealment of a material fact or by willful misrepresentation, the facts shall be reported to the district director having jurisdiction over the naturalized person's last known place of residence. If the district director is satisfied that a prima facie showing has been made that grounds for revocation exist, he shall cause an investigation to be made and report the facts in writing to the Commissioner with a recommendation as to whether revocation proceedings should be instituted. If it appears that naturalization was procured in violation of section 1425 of Title 18 of the United States Code, the facts in regard thereto may be presented by the district director to the appropriate United States Attorney for a possible criminal prosecution.

There is no judicial authority to my knowledge directly in point and the analysis of the intent of the Congress is made difficult by the immensity of the Act itself. The importance to the administration and enforcement of the Act is evident because it would ease the burden of investigations in such situations as here, but such reason of expediency cannot prevail if the subpena power exercised is in excess of the statutory grant. The authority of Congress to delegate the subpena power to administrative agencies is clearly established, even to the extent that it may delegate effective power to investigate violations of its own laws. However, the subpena power must remain within the bounds of the legislative grant, not overreach the authority granted by Congress, and in investigatory matters should be conferred in express and explicit terms for that purpose. Harriman v. Interstate Commerce Comm., 211 U.S. 407, 29 S.Ct. 115, 53 L.Ed. 253; Oklahoma Press Publishing Co. v. Walling, 327 U.S. 186, 201, 217, 66 S.Ct. 494, 90 L.Ed. 614; National Labor Relations Board v. Anchor Rome Mills, Inc., 5 Cir., 197 F.2d 447, 449. In my own judgment, subpenas should not issue upon hit or miss legal grounds.

In support of the first contention outlined, the government emphasizes the changes in section 235(a) of the Act from the previous provision governing such situations as contained in section 16 of the Immigration Act of 1917, 8 U.S.C.A. § 152.[4] The word "alien" in the old statute was changed to "person" and a broad clause in relation to the power to subpena was added, "or concerning any matter which is material and relevant to the enforcement of this Act and the administration of the Service". It was judicially settled under the old provision, 8 U.S.C.A. § 152, that the subpena power could be exercised against aliens in either deportation or exclusion proceedings. Loufakis v. U. S., 3 Cir., 81 F.2d 966; Graham v. U. S., 9 Cir., 99 F.2d 746, reversing on other grounds U. S. v. Parsons, D.C., 22 F. Supp. 149; In re Yaris, D.C., 109 F. Supp. 921, 922. Now the government says in its brief that this change and the addition in terminology in section 235 (a) are most significant and evidence a congressional intent to enlarge the subpena power to enable immigration officers to question every person, alien or citizen, in connection with the investigation of any matter under any section of the Immigration and Nationality Act. However, it is only necessary for me to decide whether these naturalized citizens under investigation as the target for possible revocation proceedings, and ultimately possible deportation proceedings, are subject to subpena under this portion of the Act. I do not think so for several reasons.

Section 235 in the body of the Act is entitled "Inspection by Immigration Officers". 66 Stat. 198. In the Title of Contents it is listed under Chapter 4, "Provisions Relating to Entry and Exclusion", 66 Stat. 163. In the analysis of the bill, contained in House Report No. 1365, U. S. Code Congressional and Administrative News 1952, pages 1709– 1710, the discussion of section 235 is under the heading, "Entry, Exclusion, and Deportation of Aliens (Ch. 4 and Sec. 287)". Such analysis, although it pertains to other provisions of subsection 235(a), outside that portion relied upon here by the government, gives some enlightenment as to the congressional intent of section 235:

"* * * In conjunction with their inspection of aliens, the bill authorizes the immigration officers to board and search vessels, aircraft, railway cars or any other conveyance or vehicle in which they believe aliens are being brought into

---

4. "* * * Any district director of immigration and naturalization designated by the Commissioner or any inspector in charge shall also have power to require by subpoena the attendance and testimony of witnesses before said inspectors and the production of books, papers, and documents touching the right of any alien to enter, reenter, reside in, or pass through the United States * * *."

the United States. The immigration officers are empowered to administer oaths, take evidence and make a record, if necessary, concerning the enforcement of the bill with reference to the privilege of any alien to enter, pass through or reside in the United States. Any person coming to the United States may be required to state under oath the purpose or purposes for which he comes, the length of time he intends to remain, whether or not he intends to remain premanently, whether, if an alien, he intends to become a citizen, and such other information as will aid the immigration officers in determining whether the person is a national of the United States or an alien, and, if the latter, whether he is subject to exclusion under any of the provisions of the bill. It is not intended by this provision to sanction the indiscriminate questioning or harassment of citizens returning to the United States, but it is to be used by the immigration officers whenever there is reason to believe that a citizen is violating or about to violate the law and is about to become expatriated. Immigration officers are also granted the power to subpena the attendance and testimony of witnesses, and the production of books, papers, and documents in aid of the enforcement of the provisions of the bill. An alien who does not appear, to the examining immigration officer, to be admissible, clearly and beyond a reasonable doubt, shall be detained for further inquiry by a special inquiry officer. * * *

"Section 287 of chapter 8 further specifies powers of immigration officers and employees of the Immigration and Naturalization Service. * * *"

■ As I read this background and the section as a whole, I cannot reasonably discern an intent that would allow subpena power over naturalized citizens for the purpose of investigation to ascertain good cause for the institution of revocation proceedings. The limitation of this administrative subpena power, in my judgment, must be kept within the confines of the provisions as stated and restricted to such purpose, and there is not the slightest indication in the legislative background nor the terms of the provisions that it may be used for the investigative purpose here sought against a naturalized citizen. One judicial discussion of section 235(a), together with other related sections, indicates generally that issues of law under such section concerns only aliens and not citizens of the United States by birth or naturalization. International Longshoremen's & Warehousemen's Union v. Boyd, D.C., 111 F.Supp. 802. In construing these provisions I have also kept in mind that it necessarily would have punitive impact upon an important right now held by the respondents, the revocation of which might ultimately result in deportation. Such punitive impact of a statute calls for strict construction of the terms. Mangaoang v. Boyd, 9 Cir., 205 F.2d 553, certiorari denied, 74 S.Ct. 129.

■ The most important reason for my conclusion as to the invalidity of the subpenas comes from a reading of the Act as a whole, which the government recommends in support of its contention. A specific, detailed and exact judicial procedure is set forth in section 340 for the revocation of naturalization certificates when they were procured by concealment of a material fact or by willful misrepresentation. The pertinent part of section 340(a) is set forth below.[5] The most striking part of this procedure, which is old in the law, is contained in

5. Sec. 340(a). "It shall be the duty of the United States district attorneys for the respective districts, upon affidavit showing good cause therefor, to institute proceedings in any court specified in subsection (a) of section 310 of this title in the judicial district in which the naturalized citizen may reside at the time of bringing suit, for the purpose of revoking and setting aside the order admitting

section 340(b).[6] In discussing the judicial procedure as outlined in section 15 of the Act of 1906, similar to the one we have today, Judge VanDevanter stated: " * * * the section makes no discrimination between the rights of naturalized and native citizens, and does not in anywise affect or disturb rights acquired through lawful naturalization, but only provides for the orderly cancellation, after full notice and hearing, of certificates of naturalization which have been procured fraudulently or illegally. It does not make any act fraudulent or illegal that was honest and legal when done, imposes no penalties, and at most provides for the annulment, by appropriate judicial proceedings, of merely colorable letters of citizenship, to which their possessors never were lawfully entitled." Luria v. U. S., 1913, 231 U.S. 9, 24, 34 S.Ct. 10, 14, 58 L.Ed. 101. A citizen is entitled to have his status determined by a judicial tribunal and have the security of judicial over administrative action. Bilokumsky v. Tod, 263 U. S. 149, 152, 44 S.Ct. 54, 68 L.Ed. 221; Ng Fung Ho v. White, 259 U.S. 276, 42 S.Ct. 492, 66 L.Ed. 938.

■ If the subpenas here were allowed to stand, the judicial procedure for the revocation of naturalization certificates would be pre-empted by administrative action, and the provisions for personal notice, sixty-day time period to answer in section 340(b) of the Act would be empty words. The method of challenge to fraudulent naturalization is plainly prescribed and any examination of the party against whom it is directed should be in accord with the judicial process. The investigative power of the Service is an important one, and I carefully avoid any undue limitation or hampering of such power. I agree that naturalization is a privilege rather than a right and an alien who seeks this privilege must conform strictly with the requirements established by statute. U. S. v. Ness, 245 U.S. 319, 38 S.Ct. 118, 62 L.Ed. 321.

It must equally be kept in mind that under our constitution a naturalized citizen stands on equal footing with the native citizen in all respects, save that of eligibility to the Presidency. Osborn v. Bank of U. S., 9 Wheat, 738, 22 U.S. 738, 6 L.Ed. 204; Boyd v. Thayer, 143 U.S. 135, 12 S.Ct. 375, 36 L.Ed. 103; Luria v. U. S., 231 U.S. 9, 34 S.Ct. 10, 58 L.Ed. 101.

My outlined reasoning in relation to section 340 of the Act is sufficient answer to the contentions that the subpena power should in this particular situation be implied as concomitant to the provisions of section 287(b) of the Act and 8 CFR 340.11. The issuance and form of subpenas in proceedings pending before immigration officials are set forth in 8 CFR 287.4(a)(b).

Each application to enforce the subpena involved is denied and dismissed.

such person to citizenship and canceling the certificate of naturalization on the ground that such order and certificate of naturalization were procured by concealment of a material fact or by willful misrepresentation, and such revocation and setting aside of the order admitting such person to citizenship and such canceling of certificate of naturalization shall be effective as of the original date of the order and certificate, respectively: * * * " 8 U.S.C.A. § 1451.

6. Sec. 340(b). "The party to whom was granted the naturalization alleged to have been procured by concealment of a ma-terial fact or by willful misrepresentation shall, in any such proceedings under subsection (a) of this section, have sixty days' personal notice, unless waived by such party, in which to make answers to the petition of the United States; and if such naturalized person be absent from the United States or from the judicial district in which such person last had his residence, such notice shall be given either by personal service upon him or by publication in the manner provided for the service of summons by publication or upon absentees by the laws of the State or the place where such suit is brought."