## UNITED STATES

v.

### Abraham MINKER, Appellant.

### No. 11347.

United States Court of Appeals
Third Circuit.

Argued Oct. 14, 1954.

Decided Dec. 1, 1954.

Rehearing Denied Jan. 6, 1955.

See, also, D.C., 118 F.Supp. 264.

Jacob Kossman, Philadelphia, Pa., for appellant.

Francis Ballard, Asst. U. S. Atty., Philadelphia, Pa. (W. Wilson White, U. S. Atty., Philadelphia, Pa., William B. Taffet, Dist. Counsel, Immigration and Naturalization Service, Newark, N. J., on the brief), for appellee.

Before GOODRICH, KALODNER and HASTIE, Circuit Judges.

HASTIE, Circuit Judge.

The contempt conviction which we review on this appeal resulted from the refusal of the appellant, Abraham Minker, a naturalized citizen who has resided in this country for more than forty years, to honor a subpoena issued by the District Director of Immigration and Naturalization requiring appellant to appear and testify as a witness in an administrative proceeding entitled "In re Abraham Minker".

From the beginning it has been agreed that this administrative proceeding was the opening inquiry in a course of official action directed toward the denaturalization of Minker.[1] If probable cause for denaturalization should be found in this administrative proceeding, the appropriate officer of the Immigration and Naturalization Service would then sub-

---

[1] After the issuance of the subpoena, a letter was sent appellant advising him that his attendance was commanded in order that he might give testimony "in connection with and relating to the possible in- stitution of proceedings seeking the revocation of your naturalization in accordance with Section 340 of the Immigration and Nationality Act of 1952."

mit his certificate and affidavit of probable cause to a United States Attorney. In normal course, the United States Attorney, armed with that affidavit and such evidence as the immigration authorities had assembled in reaching the administrative decision, would proceed, as authorized by statute, to institute a formal court action against Minker seeking a decree depriving him of citizenship.

The question before us is whether the immigration officer had authority to subpoena Minker to testify in the administrative first stage of official action toward his denaturalization. The government says that Section 235(a) of the Immigration and Nationality Act of 1952 [2] gives immigration officers such subpoena power. That section provides that " * * * any immigration officer * * shall have power to require by subpena the attendance and testimony of witnesses before immigration officers * *." It also makes this power applicable to the obtaining of testimony "concerning any matter which is material and relevant to the enforcement of this Act and the administration of the Service * * *." Certainly, the proceeding "In re Minker" was such a matter. The doubtful question is whether Abraham Minker, in his relation to "In re Minker" is a "witness" within the meaning of Section 235(a).

█ In our ordinary use and understanding of language, witnesses and parties are different categories of participants in an administrative or judicial inquiry. Yet, those so interested in a proceeding as to be parties do at times give evidence as witnesses. Therefore, it may be unclear on the face of a legislative enactment concerning witnesses whether parties are included. This ambiguity has appeared and has proved troublesome in cases arising under statutes which authorize the taking of depositions of "witnesses". It has frequently been held that parties and other interested persons are not covered by such statutes. In re Denning, 1948, 5 Terry 470, 44 Del. 470, 61 A.2d 657; Hamilton Co. v. Goring, 1940, 65 R.I. 459, 16 A.2d 334; Hubbard v. Haynes, 1949, 189 Tenn. 335, 225 S.W.2d 252. We cite these cases principally for their teaching that "witness" is likely to be an ambiguous word, the meaning of which "is to be determined in each case by the attendant circumstances and context, and that there is no safe general rule that can be applied universally." See Hubbard v. Haynes, supra, 189 Tenn. at page 338, 225 S.W.2d at page 253. Approaching this case that way we find three considerations which lead us to the conclusion that "witnesses" as used in Section 235(a) should not be construed to include such a party as appellant.

In 1952 Congress rewrote the entire body of our statutory immigration and nationality laws. Immigration and Nationality Act of 1952, 66 Stat. 163, 8 U.S.C.A. § 1101 et seq. The provision we now are construing is new language in the 1952 Act. The section in which it appears is only one of several scattered throughout the Act in which some provision is made concerning witnesses.

---

2. 66 Stat. 198, 8 U.S.C.A. § 1225(a). The subsection reads as follows:

" * * * The Attorney General and any immigration officer, including special inquiry officers, shall have power to require by subpena the attendance and testimony of witnesses before immigration officers and special inquiry officers and the production of books, papers, and documents relating to the privilege of any person to enter, reenter, reside in, or pass through the United States or concerning any matter which is material and relevant to the enforcement of this chapter and the administration of the Service, and to that end may invoke the aid of any court of the United States. Any United States district court within the jurisdiction of which investigations or inquiries are being conducted by an immigration officer or special inquiry officer may, in the event of neglect or refusal to respond to a subpena issued under this subsection or refusal to testify before an immigration officer or special inquiry officer, issue an order requiring such persons to appear before an immigration officer or special inquiry officer, produce books, papers, and documents if demanded, and testify, and any failure to obey such order of the court may be punished by the court as a contempt thereof."

Therefore, it is significant that in several such sections where Congress wished to make a provision as to witnesses applicable to parties in interest, it said so. In prescribing naturalization procedure, Congress granted the subpoena power in these terms:

> "The Attorney General shall designate employees of the Service to conduct preliminary examinations upon petitions for naturalization * * *. For such purposes any such employee * * * is authorized * * * to require by subpena the attendance and testimony of witnesses, including petitioner, * * *." 8 U.S.C.A. § 1446(b).

Similar precision appears in the regulation of deportation procedure:

> "A special inquiry officer shall conduct proceedings under this section to determine the deportability of any alien, and shall administer oaths, present and receive evidence, interrogate, examine, and cross-examine the alien or witnesses * *." 8 U.S.C.A. § 1252(b).

Almost identical language appears in connection with the exclusion of aliens:

> "A special inquiry officer shall conduct proceedings under this section, administer oaths, present and receive evidence, and interrogate, examine, and cross-examine the alien or witnesses." 8 U.S.C.A. § 1226(a).

Again, it is provided:

> "The Attorney General shall have the right to appear before any court in any naturalization proceedings for the purpose of cross-examining the petitioner and the witnesses produced in support of the petition concerning any matter touching or in any way affecting the petitioner's right to admission to citizenship, and shall have the right to call witnesses, including the petitioner, * * *." 8 U.S.C.A. § 1447(d).

In these circumstances the failure to make any equivalent amplification of the witness category in Section 235(a) is some indication that none was intended.

The second consideration is predicated on the fact that in Section 340 of the new immigration statute, Congress has been careful to outline a judicial procedure which must be followed to accomplish denaturalization. 8 U.S.C.A. § 1451. Specific provision is made for an adversary proceeding to be instituted by a United States Attorney in an appropriate court. Grounds for denaturalization must be stated in a formal charge and this document must be served upon the defendant, who shall have 60 days in which to answer. A trial follows. Congress must have believed that the administration of justice in these serious cases would be facilitated by safeguards inherent in such procedure. But, as one district judge has pointed out in a case indistinguishable from ours, "If the subpenas here were allowed to stand, the judicial procedure for the revocation of naturalization certificates would be preempted by administrative action, and the provisions for personal notice, sixty-day time period to answer in section 340(b) of the Act would be empty words." Application of Barnes, D.C.N.D.N.Y.1953, 116 F.Supp. 464, 469. Accord, In re Oddo, D.C.S.D.N.Y.1953, 117 F.Supp. 323. Of course Congress may have intended to minimize the safeguards afforded by Section 340 by compelling the citizen to be a witness against himself in an administrative pretrial. But we think such intention sufficiently unlikely to make a court reluctant to find it by an unnecessarily broad interpretation of the subpoena power conferred by Section 235(a).

■ Finally, we think the character of denaturalization is such that in choosing between reasonable alternative constructions of statutory language, a court should incline toward the construction favorable to the person whose status is put in jeopardy. The strict construction of criminal statutes is an accepted policy of our jurisprudence designed to protect those who live under our law from possible injustice. Technically, we are not administering the criminal law in this

case. But we are concerned with the administration of a sanction which in effect is gravely penal. A fine or imprisonment is the normal criminal penalty. But loss of citizenship is a far graver penalty than most fines and many prison sentences. The Supreme Court has recognized this by requiring a strictness of proof in denaturalization cases which approximates that imposed in criminal cases. Schneiderman v. United States, 1943, 320 U.S. 118, 63 S.Ct. 1333, 87 L.Ed. 1796; Baumgartner v. United States, 1944, 322 U.S. 665, 64 S.Ct. 1240, 88 L.Ed. 1525. And a court of appeals has recently held that the rule of strict construction of penal statutes applies to legislation of "punitive impact" very much like denaturalization. Mangaoang v. Boyd, 9 Cir., 1953, 205 F.2d 553. We think this is sound and salutary doctrine. Its application here is the third factor which leads us to the construction urged by appellant.

We conclude that a citizen confronted with an administrative proceeding which poses a challenge to his right to retain citizenship is not to be regarded as a "witness" within the meaning of Section 235(a) or required under that section to appear and testify against himself. We note that the learned district judge in this case was careful to say that he was not deciding what the appellant might be required to testify but merely that, in response to the subpoena, he must submit himself as a witness. However, we think the statute does not contemplate that he must be a witness at all in an administrative inquiry instituted with a view to depriving him of citizenship. That much we decide, but no more. We neither consider nor intimate any opinion upon any of the countless other situations in which immigration officers may undertake to require by subpoena the appearance and testimony of interested persons in administrative inquiries. E.g., the problem presented, under a statute now repealed, in Loufakis v. United States, 3 Cir., 1936, 81 F.2d 966.

The judgment will be reversed.