The **UNITED STATES** of America,
Plaintiff-Appellee,

v.

Frances **VIVIAN**, Defendant-Appellant.
No. 11313.

United States Court of Appeals
Seventh Circuit.
June 28, 1955.

See also 217 F.2d 882.

Pearl M. Hart, Edmund Hatfield, Chicago, Ill., for appellant.

Robert Tieken, U. S. Atty., Anna R. Lavin, John Peter Lulinski, Asst. U. S. Attys., Chicago, Ill., for appellee.

Before FINNEGAN, SWAIM and SCHNACKENBERG, Circuit Judges.

FINNEGAN, Circuit Judge.

A subpoena issued by the Acting District Director of the Immigration and Naturalization Service, Chicago, Illinois, underlying this appeal, was served upon defendant, Vivian, April 2, 1954. She appeared in response to it; was granted a continuance until April 13, 1954, when she again appeared and refused to testify. By filing a complaint to compel Vivian's obedience to that subpoena, the government sought aid from the district court under § 235 of the Immigration and

Nationality Act of 1952, 66 Stat. 198, 8 U.S.C.A. § 1225(a). That complaint, invoking § 235, was not served upon Vivian, nor was process, mentioned by Rule 4, Fed.R.Civ.Proc., 28 U.S.C.A., issued in connection with it. In his order, entered *ex parte,* the trial judge directed defendant to appear in the court below and " * * * give testimony in compliance with the mandate of the said subpoena * * * " A certified copy of this judicial order was then served on defendant, June 4, 1954, by the United States Marshal.

About a week later Vivian, acting through private counsel, interposed a motion to: (i) dismiss the government's complaint and, (ii) vacate the June 2, 1954 order. Subsequently this motion was implemented by amendment and memorandum of law. Defendant appeals the district court's order, entered September 17, 1954 after arguments of counsel, overruling her motion and further providing:

> "that the defendant * * * appear before Joseph H. Kadlec, Investigator, Immigration and Naturalization Service, Room 934 * * * and then and there to give testimony in an investigation relating to Henry Halsey Noyes and Gertrude Stedman Noyes, pursuant to Section 235(a) of the Immigration and Nationality Act of 1952."

■ Congress granted power to subpoena, and provided for enforcement of such conferred power, in § 235, of the Act:

> " * * * The Attorney General and *any immigration officer, including* special inquiry officers, shall have power to administer oaths and to take and consider evidence of or from *any person* touching the privilege of any alien or person he believes or suspects to be an alien *to enter, reenter, pass through, or reside* in the United States *or* concerning any matter which is material and relevant *to the enforcement of this Act* and the administration of the Service, and, where such action may be necessary, to make a written record of such evidence. Any person coming into the United States may be required to state under oath the purpose or purposes for which he comes, the length of time he intends to remain in the United States, whether or not he intends to remain in the United States permanently and, if an alien, whether he intends to become a citizen thereof, and such other items of information as will aid the immigration officer in determining whether he is a national of the United States or an alien and, if the latter, whether he belongs to any of the excluded classes enumerated in section 212. The *Attorney General and any immigration officer,* including special inquiry officers, *shall have power* to require by *subpena* the attendance and testimony of *witnesses before immigration officers* and special inquiry officers and the production of books, papers, and documents relating to the privilege of any person to enter, reenter, reside in, or pass through the United States *or concerning any matter which is material and relevant to the enforcement of this* Act and the administration of the Service, *and to that end may invoke the aid of any court of the United States. Any United States district* court within the jurisdiction of which investigations or inquiries are being conducted by an immigration officer or special inquiry officer, may, *in the event of neglect or refusal to respond* to a subpena issued under this subsection or refusal to testify before an immigration officer or special inquiry officer, *issue an order requiring such persons to appear before an immigration officer or special* inquiry officer, produce books, papers, and documents if demanded, and testify, and any failure to obey such order of the court may be punished by the court as a contempt thereof." (Emphasis ours.)

Manifestly defendant's critical attack on 8 C.F.R. § 1.1(9) (i) and (ii), as constituting attempted delegation of administrative subpoena power, is unpersuasive. Because, the import of the nomenclature "immigration officer" employed in § 235, is derived first from this phraseology in § 101(a)(18), of the Act itself:

"The term 'immigration officer' means any employee or class of employees of the Service or of the United States designated by the Attorney General, individually *or by regulation, to perform the functions* of an *immigration officer* specified by this Act or any section thereof." 8 U.S.C.A. § 1101(a) (18). (Italics supplied.)

8 C.F.R.[1] § 1.1, (9) (i) and (ii) follow:

"§ 1.1 * * * The terms defined in section 101 of the Immigration and Nationality Act *have the same meanings* ascribed to them in that section and as supplemented, explained, and further defined in this chapter." (Italics added.)

"The term 'immigration officer' means:

"(i) Any officer or employee of the Service who, on December 24, 1952, was serving under appointment theretofore made to the position of * * * investigator * * * whose appointment has not terminated, or who hereafter is appointed to such position; and

"(ii) Any person designated by the Commissioner to perform the duties and exercise the powers of an immigration officer as set forth in the Immigration and Nationality Act."

Congress placed the designating power in the hands of the Attorney General and we refuse to strike down the relevant statutory sections because his appointees, or delegates might possibly be unqualified or selected from varying levels of workers. We take a dim view of the defendant's argument that the designating authority is conferred in such vague and indefinite language as to be violative of due process and in contravention of the Fifth Amendment. Necessarily enforcement and administration of this comprehensive piece of legislation requires considerable manpower and we think it unnecessary that Congress constitute itself a personnel bureau and set up job descriptions replete with all the myriad details of occupational qualifications. Sustaining the rent control aspects of the Emergency Control Act of 1942, 56 Stat. 23, 50 U.S.C.App. (Supp. II) § 901 et seq., the Supreme Court speaking through Mr. Justice Douglas, observed in Bowles v. Willingham, 1944, 321 U.S. 503, 515, 64 S.Ct. 641, 647, 88 L.Ed. 892.

"We recently stated in connection with this problem of delegation, 'The Constitution, viewed as a continuously operative charter of government, is not to be interpreted as demanding the impossible or the impracticable.' * * * In terms of hard-headed practicalities Congress frequently could not perform its functions if it were required to make an appraisal of the myriad of facts applicable to varying situations, area by area throughout the land, and then to determine in each case what should be done. Congress does not abdicate its functions when it describes *what* job must be done, *who* must do it, and what is the scope of his authority. * * * Whether a particular grant of authority to an officer or agency is wise or unwise, raises questions which are none of our concern. Our inquiry ends with the constitutional issue * * *.'"

---

1. See c. 417, 49 Stat. 500 for the establishment of the Federal Register, provision requiring publication, and filing of copies for publication with the National Archives Establishment. 44 U.S.C.A. § 307. Such filing constitutes constructive notice of the contents of documents deposited in compliance with the statute. Federal Crop Insurance Corp. v. Merrill, 1947, 332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10.

Subsequent litigation has given narrow reading to Cudahy Packing Co. of Louisiana v. Holland, 1942, 315 U.S. 357, 788, 62 S.Ct. 651, 86 L.Ed. 895, cited by defendant in support of her contentions launched against subdelegation of subpoena power. See Fleming v. Mohawk Wrecking & Lumber Co., 1947, 331 U.S. 111, 67 S.Ct. 1129, 91 L.Ed. 1375; Edwards v. N. L. R. B., 5 Cir., 1951, 189 F.2d 970. But we think there is absent any issue of subdelegation, in this case, since as already pointed out the basic subpoena involved was signed by the Acting District Director. Now defendant simply blurs her point by asserting that the district judge has ordered her appearance before an "investigator" of the Service. If Vivian contends, as we think she does, that the language of § 235 (a) inhibited the district court's action because the word "investigator" is unmentioned by § 235(a), she is mistaken in light of § 101(a) (18) and the quoted regulations. A familiar canon of construction requires that the meaning of a statute is to be looked for in all its sections taken together and in that posture related to the end in view. Cherokee Intermarriage Cases, Red Bird v. United States, 1906, 203 U.S. 76, 89, 27 S.Ct. 29, 51 L.Ed. 96. It would sap life from the Immigration and Nationality Act if we agreed that constriction of the designating power was essential to validity of the subpoena authority. There must be some sensible granting of that authority coupled with enough elasticity to foresee and cope with daily problems confronting administrators of the Act. We think the legislation involved survives defendant's attack and is unimpaired in the respects suggested by Vivian.

Because Vivian's testimony is sought merely as a witness in contradistinction from status as a party, we say that although certiorari was granted, April 11, 1955, 349 U.S. 904, 75 S.Ct. 582, by the Supreme Court in United States v. Minker, 3 Cir., 1955, 217 F.2d 350, it is unnecessary to await a decision in that case. While neither party before us cited the Minker case, we were cited, by the government, to Application of Barnes, 2 Cir., 1955, 219 F.2d 137 in which, we now find, certiorari was also allowed, May 16, 1955. Falcone v. Barnes, 75 S.Ct. 774. The Minker case is cited by the Second Circuit in the Barnes opinion. Because Barnes is awaiting review we refrain from relying upon it and prefer to decide Vivian's appeal without reference to Barnes. We are aware that Barnes involved a question whether the subpoena power found in § 235(a) extends to cases where a decree of denaturalization is sought under § 340 of the Act, 8 U.S.C.A. § 1451.

Vivian pursues a different tangential excursion from § 235(a). She contends that the complaint shows her testimony is sought in connection with " * * * an investigation relating to the right or privilege of Henry Halsey Noyes and Gertrude Stedman Noyes to remain in the United States" and, that deportation proceedings are outside the ambit of § 235(a), which refers to entry and exclusion. Defendant's thesis is erected upon the title of chapter 4, in which § 235(a) is found, viz.: "Provisions Relating to Entry and Exclusion." By her argument defendant envisages § 235(a) in isolation.

But defendant's argument is quickly repelled by examining parts of § 235(a) as printed in 66 Stat. 198–199, and quoted earlier in this opinion. By force of 65 Stat. 711, Oct. 31, 1951, 1 U.S. C.A. § 112, the United States Statutes at Large " * * * shall be legal evidence of laws * * * in all the courts of the United States * * *." Though Stephan v. United States, 1943, 319 U.S. 423, 426, 63 S.Ct. 1135, 1137, 87 L.Ed. 1490, was decided prior to 61 Stat. 638, 1 U.S.C.A. § 204, providing that the United States Code is *"prima facie* the laws of the United States," it was there said:

"By 1 U.S.C. § 54(a), 1 U.S.C.A. § 54(a) the Code establishes 'prima facie' the laws of the United States. But the very meaning of *'prima facie'* is that the Code cannot pre-

vail over the Statutes at Large when the two are inconsistent * * * (citing) * * *."

Defendant's argument virtually hangs on the word and reference to this *"Chapter"* appearing in the United States Code version of § 235(a), 8 U.S.C.A. § 1225 (a), and duplicated in 8 U.S.C.A. § 1225 in lieu of this *"Act"* which is the actual word quoted above from the Statutes at Large. Consequently extensive discussion about restricting § 235(a) within the bounds of Chapter 4, is unwarranted. By employing "Act," instead of "Chapter," we think Congress has made it clear that § 235(a) applies to deportation proceedings under the Immigration and Nationality Act[2] of 1952.

■ One other facet of defendant's appeal should be discussed. She relies on Rule 81(a)(3), Fed.R.Civ.Proc., 28 U.S. C.A. as mandating adherence to the Rules of Civil Procedure even in instances such as this where the Immigration and Nationality Service seeks to infuse vitality into its subpoena by aid of a district court. While her argument rests on Rule 81(a)(3) it conveniently ignores the following italicized lines found in that Rule:

" * * * These rules apply (1) to proceedings to compel the giving of testimony or production of documents in accordance with a subpoena issued by an officer or agency of the United States under any statute of the United States *except as otherwise provided by statute or by rules of the district court or by order of the court in the proceedings, and (2) to appeals in such proceedings."* (Italics supplied.)

In short Vivian contends that a summons and service of process should have been served upon her as though the government's complaint were a *de novo* civil action commenced against her. But § 235 is a statute within Rule 81 that provides for the procedure followed here and we so hold. Section 235 differs significantly from the provisions involved in Martin v. Chandis Securities Co., 9 Cir., 1942, 128 F.2d 731, on which defendant relies, and is, for that reason, inapposite. It would frustrate the theory and purpose of § 235(a) if every rejected subpoena would have to be subjected to a separate civil proceeding accompanied by issuance of process bottomed on a complaint. Pyramiding summonses on subpoenas serves no useful purpose. Indeed, here, Vivian received a judicial hearing below, at one stage, before the order appealed was entered. This is consonant with the reasoning of Judge Lindley in United States v. Vivian, 7 Cir., 1955, 217 F.2d 882, 883.

Application to the district court was the statutory § 235, method of enforcing a subpoena by an order of court decreeing compliance. Clearly, enforcement by such an order ought to be a sure expeditious way of gaining obedience because disregard of the district court's order constitutes contempt. To construe the judicial aid mentioned in § 235 as requiring resort to instituting a new lawsuit requiring service of process, at its threshold, would frustrate the clear purpose of § 235. Again we point out Vivian is only sought as a witness and in an entirely different proceeding against other persons now awaiting her attendance to give testimony. On her theory every witness could forestall the government and force it to institute as many lawsuits as there are witnesses in any given case.

Because we singled out several items in defendant's brief for particular treat-

2. Our view is consistent with the preamble, 66 Stat. 163, *i. e.,* "That this *Act,* divided into titles, chapters, and sections according to the following table of contents, may be cited as the 'Immigration and Nationality Act.'"

Apparently the variance between *Act* and *Chapter* found in the Statutes at Large and both the United States Code and 8 U.S.C.A. § 1225 escaped the no-

tice of counsel for the government and defendant. Phraseology consistent with 66 Stat. 198–199 is also found in Laws Applicable to Immigration and Nationality, 66 (1953) published by the Department of Justice and 1 U.S.Code Cong. and Adm.News 1952, p. 199. Title 8, Aliens and Nationality has not yet been enacted into positive law. See Preface to U.S.C. Supp. I (1952 ed.).

ment in this opinion is by no means an indication that defendant's other points have been overlooked. Quite the contrary for on close study of all her asserted propositions only those discussed by us, here, merited even this much attention.

Absence of reversible errors compels affirmance of the judgment appealed.

Affirmed.