UNITED STATES of America, Plaintiff-Appellee,

v.

John ZUSKAR, Defendant-Appellant.

UNITED STATES of America, Plaintiff-Appellee,

v.

James BUDZILENI, Defendant-Appellant.

Nos. 11718, 11731.

United States Court of Appeals Seventh Circuit.

Oct. 24, 1956.

Leo Berman, Leonard Karlin, Chicago, Ill., for John Zuskar.

Philip S. Aimen, Chicago, Ill., for James Budzileni.

Robert Tieken, U. S. Atty., Jewel Stradford Rogers, John Peter Lulinski, Asst. U. S. Attys., Chicago, Ill., for appellee.

Before MAJOR, FINNEGAN and LINDLEY, Circuit Judges.

FINNEGAN, Circuit Judge.

Each of these appeals contains a similar basic question and for that reason we treat with them in one consolidated opinion.

## I. No. 11718

Zuskar, a naturalized citizen of the United States and defendant here, was subpoened [1] as a witness under § 235 (a) [2] of the Immigration and Nationali-

---

1. No request for the production of books, papers and documents was made.

2. That part of the Act, 66 Stat. 163, 198–199, appearing in § 235(a) relevant here follows:

"The inspection, other than the physical and mental examination, of aliens (including alien crewmen) seeking admission or readmission to or the privilege of passing through the United States shall be conducted by immigration officers, except as otherwise provided in regard to special inquiry officers. All aliens arriving at ports of the United States shall be examined by one or more immigration officers at the discretion of the Attorney General and under such regulations as he may prescribe. Immigration officers are hereby authorized and empowered to board and search any vessel, aircraft, railway car, or other conveyance, or vehicle in which they believe aliens are being brought into the United States. The Attorney General and any immigration officer, including special inquiry officers, shall have power to administer oaths and to take and consider evidence of or from any person touching the privilege of any alien or person he believes or suspects to be an alien to enter, reenter, pass through, or reside in the United States or concerning any matter which is material and relevant to the enforcement of this Act and the administration of the Service, and, where such action may be necessary, to make a written record of such evidence. Any person coming into the United States may be required to state under oath the purpose or purposes for which he comes, the length of time he intends to remain in the United States, whether or not he intends to remain in the United States permanently and, if an alien, whether he intends to become a citizen thereof, and such other items of information as will aid the immigration officer in determining whether he is a national of the United States or an alien and, if the latter, whether he belongs to any of the excluded classes enumerated in section 212. The Attorney General and any immigration officer, including special inquiry officers, shall have power to require by subpena the attendance and testimony of witnesses before immigration officers and special inquiry officers and the production of books, papers, and documents *relating to the privilege of any person*

ty Act of 1952, 66 Stat. 163, 198, 8 U.S. C.A. § 1225(a) to give testimony before the Immigration and Naturalization Service regarding one Calvin Brook. Personal service was made, August 27, 1954, on the defendant. Acting upon the government's invocation of § 235(a) by its petition, the district judge entered an ex-parte order, September 29, 1954, compelling Zuskar to appear before the Service on October 13, 1954. Two days prior to this latter date, counsel for defendant filed a written motion seeking dismissal of the complaint and vacation of the order grounded on it. A time extension was granted defendant within which to submit his written brief and the government, later, presented its memorandum in reply. These briefs, as are several others subsequently filed below by the parties, are significant because they contain the few recitations of non-evidentiary facts mentioned in the entire cause, but which are apparently undisputed. We can only decide the case before us on facts exhibited by the record and there is an utter paucity of evidence supporting the issues framed by defendant.

Relying upon the authority of our decision reported as United States v. Vivian, 7 Cir., 1955, 224 F.2d 53 the district judge overruled defendant's motion and issued an order, dated February 2, 1956, directing Zuskar to appear and give testimony before Joseph H. Kadlec, an investigator of the Service, "relating to Calvin Brooks." Thereafter the defendant interposed a motion asking for reconsideration of the February order. Again the government responded with a written answer replying to defendant's detailed memorandum submitted in support of his latest motion. After the same district judge, who had acted throughout the earlier stages of this matter heard oral arguments of counsel for both the parties, he denied the motion for reconsideration and again issued an order compelling obedience to the administrative subpoena. This appeal followed.

We are informed in the government's brief on appeal that the facts set out in defendant's brief are substantially correct save in one or two enumerated details. If we treat such recitations as uncontroverted, it then appears from defendant's brief that " *  *  * He duly appeared at the time and place (referring to the Director's initial subpoena underlying the court order) through his attorney, that he was not apprised of the nature of the hearing, what was sought to be heard or discovered, the scope of the inquiry  *  *  * "

Though defendant insists he may himself be the subject of inquiry by the Service he has failed in making any showing on that point. The superficial resemblance of this case to United States v. Minker, 1956, 350 U.S. 179, 76 S.Ct. 281, 283, is suggested solely by defendant's argument, which evaporates for want of some evidence to give it substance. Mr. Justice Frankfurter carefully delineated the "controlling issue" disposed of in the Minker opinion when he said it was: " *  *  * whether this section [§ 235(a)] empowers an immigration officer to subpoena a naturalized citizen who is *the subject of an investigation by the Service,* where the *purpose* of the investigation is to determine if good cause exists for the institution of denaturalization proceedings under § 340(a) of the Act." (Italics supplied.) Actually there were two conflicting Circuit

---

*to enter, reenter, reside in,* or *pass through* the United States *or concerning any matter* which *is material and relevant to the enforcement of this Act and the administration of the Service, and to that end may invoke the aid of any court of the United States.* Any United States district court within the jurisdiction of which investigations or inquiries are being conducted by an immigration officer or special inquiry officer

may, in the event of neglect or refusal to respond to a subpena issued under this subsection or refusal to testify before an immigration officer or special inquiry officer, issue an order requiring such persons to appear before an immigration officer or special inquiry officer, produce books, papers, and documents if demanded, and testify, and any failure to obey such order of the court may be punished by the court as a contempt thereof."

**532**

Court cases disposed of in United States v. Minker, 1956, 350 U.S. 179, 180, 182–183, 76 S.Ct. 281. A Third Circuit case, reported in 1955, 217 F.2d 350, 351 shows that the Director's subpoena required Minker, a naturalized citizen, "to appear and testify as a witness in an administrative proceeding entitled 'In re Abraham Minker'". (Id.) The "doubtful question" involved there was stated by Judge Hastie as being "whether Abraham Minker, in his relation to 'In re Minker' is a 'witness' within the meaning of Section 235(a)." (Id. at page 351).

Falcone v. Barnes (Application of Barnes, 2 Cir., 1955, 219 F.2d 137, 139), is the other companion group of cases that were considered with Minker by the Supreme Court. Judge Medina, speaking for his court, said: "The sole question raised by these two appeals is whether Section 235(a) * * * authorizes an officer of the * * * Service to issue a subpoena requiring a naturalized citizen to testify, in an effort to determine if 'good cause' exists for the commencement of proceedings to revoke the order admitting such person to citizenship." (Id. at page 139).

■ At bar, Zuskar was subpoened to testify "In re Calvin Brook, file 0900–50383." While the instant administrative subpoena may be drawn to obscure what it seeks to reveal we cannot afford enough speculation to bring it within the Minker facts. This is not a problem of what we could envisage in this perspective, but rather an inquiry about the perspective itself. As we read the Minker opinion § 235(a), which otherwise survived judicial scrutiny, is unavailable to the Service for instances described in the "controlling issue" already noted. The facts before us are unlike those upon which the Minker case holding was reached. Much of defendant's arguments erected with excerpts from the several

opinions handed down by the Minker court, and extirpated from other sources are quickly dispelled with a trenchant passage written by Chief Justice Marshall in Cohens v. Commonwealth of Virginia, 1821, 6 Wheat. 264, at page 398, 5 L.Ed. 257:

"The counsel for the defendant * * * urge * * * some *dicta* of the court, in the case of Marbury v. Madison [1 Cranch 137, 2 L.Ed. 60]. It is a maxim, not to be disregarded, that general expressions, in every opinion are to be taken in connection with the case in which those expressions are used. If they go beyond the case, they may be respected, but ought not to control the judgment in the subsequent suit, when the very point is presented for decision. The reason of this maxim is obvious. The question before the court is investigated with care, and considered in its full extent. Other principles which may serve to illustrate it, are considered in their relation to the case decided, but their possible bearing on all other cases is seldom completely investigated."

We could only follow United States v. Minker, 1956, 350 U.S. 179, 76 S.Ct. 281 by ignoring critical factual disparities between that case and Zuskar's. All this record discloses is an attempt to compel appearance and testimony of a recalcitrant *witness*. If there is a subterfuge lurking in the Director's subpoena the defendant has done little to reveal it other than urge that his appearance and testimony might turn the tables on him. Our business is with facts. Indeed by that line of argument Zuskar virtually concedes he is only a *witness*, but one fearful of potentialities.

The constitutional attack launched against § 235(a) is woefully tenuous. Administrative subpoenas [3] and court or-

---

3. An interesting sidelight on the old argument concerning the issuance of subpoenas by the judiciary rather than an administrative agency brings to mind this observation:

"One obvious difficulty with this view is that even if the subpena power is confined exclusively to the judiciary, the result is that subpenas are issued not by judges but by clerks of court and by the assistants who work in clerk's offices.

ders for their enforcement have been previously examined in the case-controversy and separation of governmental powers settings. Interstate Commerce Commission v. Brimson, 1894, 154 U.S. 447, 489, 14 S.Ct. 1125, 38 L.Ed. 1047. Since Brimson Congress has customarily provided for resort to the courts by agencies for orders compelling obedience to subpoenas. See e. g. Lilienthal, The Power of Governmental Agencies To Compel Testimony, 39 Harv.L.Rev. 694 (1926); Handler, The Constitutionality of Investigations By The Federal Trade Commission, 28 Col.L.Rev. 708 and 905 (1928). The present appeal does not involve a subpoena *duces tecum.*

■ Much of defendant's core theories are based upon statements that Calvin Brook is a naturalized citizen or that the basic subpoena fails to state he is an alien. Neither side has troubled to establish Brooks' citizenship status as an evidentiary fact. Yet defendant asks us to read § 235(a) as being inapplicable when the subject of the Service's investigation is a citizen of the United States. Defendant seems to be arguing on behalf of Calvin Brook. But § 235(a) contains the word "person" in connection with the investigatory powers mentioned in that provision. If Brooks is a person his citizenship status is a matter of proof by him in his own proceeding and not a matter of defense to a subpoena by Zuskar. We decline to pass upon the constitutionality of § 235(a) by guessing about Brook's citizenship, recitations in defense motions and briefs notwithstanding.

■ Mr. Justice Frankfurter supplied a compact over-view of the relevant legislative changes and the necessary result which followed, as part of the majority opinion in United States v. Minker, 1956, 350 U.S. 179, 184–185, 76 S.Ct. 281, 285:

"The 1952 Act in § 235(a) retained the substance of this language in § 16. But the word 'alien' was changed to 'person,' and additional language extended the subpoena power to 'any matter which is material and relevant to the enforcement of this Act and the administration of the Service.' If the additional clause, following the portion 'relating to the privilege of any person to enter, reenter, reside in, or pass through the United States', had merely read 'and any other matter which is material and relevant,' the doctrine of *ejusdem generis* would appropriately be invoked to limit the subpoena power to an investigation pertaining to questions of admission and deportation. The comprehensive addition of the clause 'or concerning any matter which is material and relevant to the enforcement of this Act and the administration of the Service', *precludes such narrowing reading.* 'Act' *encompasses the full range of subjects covered by the statute. * * * Throughout this statute the word 'Act' is given its full significance. The word embraces the entire statute. * * *"* [4]

■ "Witness" found in § 235(a) is entitled to its plain meaning. Caminetti v. United States, 1917, 242 U.S. 470, 87 S.Ct. 192, 61 L.Ed. 442; "We do not inquire what the legislature meant; we ask only what the statute means," Holmes, Collected Legal Papers 207; 2 Sutherland Statutory Construction, c. 45 (3rd ed. Horack, Jr. 1943); Mr. Justice Frankfurter, Some Reflections on the Reading of Statutes, 47 Col.L.Rev. 527 (1947). We think a § 235(a) witness re-

---

For instance, the Federal Rules of Civil Procedure provide that clerks 'shall' issue on the request of a party both subpenas for witnesses and subpenas for records, 'signed and sealed but otherwise in blank.' [Fed.R.Civ.P. 45(a), 28 U.S.C.A.] If issuance of subpenas by anyone but a judge is dangerous to liberty, then the traditional system of the regular courts, which seemingly operates to the satisfaction of all concerned, must be radically changed." Davis, Handbook of Administrative Law 130 (1951).

4. Italics ours except for the words *"ejusdem generis."*

534

fers to one in the relationship that Zuskar apparently is to the Brooks matter. Nothing exhibited by the evidence before us supplies a sound legalistic basis for excluding Zuskar from the class of people legislatively designated "witnesses." It must be borne in mind that on the face of the subpoena directed to him, Minker snugly fitted into both statutory words "person" and "witness." In that setting a collision of interests, rights and values was patent.

■■ It would be unrealistic to ignore a possibility that the Director's witness subpoenas could become a device for pre-viewing and turning up likely suspects as subjects of future investigations. Of course there is a presumption of regularity supporting official acts of public officers. Cooper v. United States, 8 Cir., 1956, 233 F.2d 821. The sweep of power to summons witnesses is a matter for Congressional control. Any assumption that Congress overlooked this aspect of § 235(a) is unwarranted on our part. The 1952 change from the word "alien" to "person" demonstrates some Congressional awareness of the prior narrow scope of inquiry permitted the Service before § 235(a).

■■ On the other hand we refrain from constricting the potential of persons vulnerable to subpoena as witnesses, before the Service, by now amending or altering § 235(a) so that "witnesses" must read as meaning only non-citizens in order to coincide with defendant's contention. A witness is protected by, and entitled to, the shield of the Fifth Amendment, and as Mr. Justice Brandeis also pointed out when speaking for the Court in McCarthy v. Arndstein, 1924, 266 U.S. 34, 40, 45 S.Ct. 16, 17, 69 L.Ed. 158, the privilege against self-incrimination "is not ordinarily dependent upon the nature of the proceeding in which the testimony is sought or is to be used. It applies alike to civil and criminal proceedings, wherever the answer might tend to subject to criminal responsibility him who gives it." See also: Counselman v. Hitchcock, 1892, 142 U.S. 547, 12 S.Ct. 195, 35 L.Ed. 1110.

When the contested issues concerning applicability of certain Federal Rules of Civil Procedure, now raised on this defendant's behalf, are matched with those earlier disposed of by United States v. Vivian, 7 Cir., 1955, 224 F.2d 53 that opinion controls this aspect of Zuskar's case.

■ There is nothing in § 235(a) requiring the Director to state a cause of action in his subpoenas. Any evaluation of the alleged refusal by the Director to inform Zuskar of the reason for summoning him is thwarted by lack of competent evidence on the point urged by defendant.

II. No. 11731

Much of what we have said thus far applies with equal force in Budzileni's appeal. Indeed the questions of law raised on his behalf so closely resemble those urged by Zuskar, it is unnecessary to repeat our views when disposing of appeal No. 11731.

Budzileni, defendant, had been subpoenaed by the District Director of the Immigration and Naturalization Service, Chicago, to give testimony relating to the right or privilege of Gunnar Carl Carlquist, a naturalized citizen, to remain in the United States. Responding to this subpoena, Budzileni appeared before Stanley F. Perryman, an investigator for the Service, on June 14, 1954. Defendant refused to submit to an oath or answer many of the questions put to him by Perryman. During the latter's questioning Budzileni repeatedly stated that he was desirous of consulting an attorney. He was then advised by Perryman that no further action would be taken by the Service until June 17, 1954; that if he (Budzileni) "had not appeared by that time with his attorney the matter would be presented to the United States District Court." Defendant's absence on that continued date for hearing caused Perryman to telephone Budzileni, who stated, in substance, that he "had no intention of appearing at the Immigration office in the future or of answering any questions."

By its complaint, filed September 20, 1954, the government invoked § 235(a) of the Act. That pleading was implemented by three Exhibits: (1) the Director's subpoena directing defendant to appear on June 14, 1954, (2) a short stenographic transcript of the proceedings between the investigator and defendant, and (3) Perryman's affidavit attesting to that transcript; Budzileni's refusal to be sworn and answer under oath and the continuance granted him.

Based upon the foregoing, an ex parte order compelling defendant to appear and testify before Perryman was entered, September 21, 1954, by the district judge. Subsequently a deputy U. S. Marshal served defendant with a certified copy of that order. Thereafter counsel for Budzileni filed a motion to stay the order compelling obedience to the Service's subpoena, and also asking, in the alternative, that the complaint be dismissed and the order vacated. Defendant's motion, containing the reasons and grounds relied on in support of it, was denied. This order of denial entered February 24, 1956 also embraced a further order identical in terms with the one entered on September 21, 1954. Defendant has appealed from the February order.

Since United States v. Zucca, 1956, 351 U.S. 91, 76 S.Ct. 671, a United States attorney must have an affidavit showing good cause as a prerequisite to maintenance of denaturalization proceedings under § 340(a) of the Act, 8 U.S.C.A. § 1451(a). Earlier, by its decision reported as United States v. Minker, 1956, 350 U.S. 179, 76 S.Ct. 281, heavily relied on by defendant, the court struck down an attempt by the Service to employ its subpoena power under § 235(a) for summoning a naturalized citizen who is himself the subject of an investigation to determine if good cause exists for the institution of § 340(a) denaturalization proceedings. It is now settled that the requisite § 340(a) affidavit cannot be prepared by the simple expedient of subpoenaing the subject person before the Service as a witness and interrogating him. The open question, whether a witness (other than a person who is named as the subject of an investigation) can be subpoenaed under § 235(a) to appear in an investigation which might culminate in a § 340(a) proceeding, either as to himself or someone else, is now before us.

Defendant stresses certain questions and answers which took place when he appeared before Perryman as showing that he (Budzileni) was actually the subject of the investigation rather than Carlquist. But we think they are inconclusive.

Other than defendant's intimations and arguments we have no evidence before us establishing that he, Budzileni, is the subject of denaturalization investigations. Without more than this record reveals we refuse to choke off the application of § 235(a) to Budzileni's subpoena.

What we said in United States v. Vivian, 7 Cir., 1955, 224 F.2d 53 constitutes the answer to why one sentence wrested by defendant from Judge Lindley's earlier opinion in United States v. Vivian, 7 Cir., 1955, 217 F.2d 882 would be an unwarranted point of departure in appeal No. 11731.

Though all contested issues, points and questions presented on each defendant's behalf have received full consideration, it is unnecessary to further extend this combined disposition of their respective cases.

For all the reasons stated above the judgments entered in appeals numbered 11718 and 11731, respectively, and brought here for review, are each affirmed.

Judgments affirmed.