**James F. CRAFTS, Appellant,**

v.

**FEDERAL TRADE COMMISSION,**
**Appellee.**

**No. 14972.**

United States Court of Appeals
Ninth Circuit.

Feb. 27, 1957.

Christopher Jenks, Orrick, Dahlquist, Herrington & Sutcliffe, San Francisco, Cal., for appellant.

Earl W. Kintner, Gen. Counsel, Robert B. Dawkins, Asst. Gen. Counsel, Janet D. Saxon, Washington, D. C., Don Eastvold, Atty. Gen., Bernard C. Lonctot, Chief Asst. Atty. Gen., J. Calvin Simpson, Olympia, Wash., James E. Corkey, John W. Brookfield, Jr., Washington, D. C., Edmund G. Brown, Atty. Gen., Harold B. Haas, San Francisco, Cal., for appellee.

Before LEMMON, FEE and CHAMBERS, Circuit Judges.

JAMES ALGER FEE, Circuit Judge.

This is an appeal from an order enforcing a subpoena duces tecum issued by the Federal Trade Commission to Crafts in a proceeding against Fireman's Fund Indemnity Company. The trial court issued an order as follows:

"Order Requiring the Giving of Evidence and the Production of Documentary Evidence

"The Federal Trade Commission, having invoked the aid of this Court in requiring the attendance and testimony of James F. Crafts and the production of documentary evidence by James F. Crafts, as a witness in a proceeding instituted by the Federal Trade Commission against Fireman's Fund Indemnity Company (D. 6310), and

"The Court having considered the application, it is hereby

"Ordered: That the application be, and the same hereby is granted, and that the said James F. Crafts be, and he is, hereby ordered to appear upon not less than ten days' notice at a time and place to be set by the Federal Trade Commis-

sion or a Hearing Examiner thereof designated by the said Commission to take testimony and receive evidence, and to perform all other duties authorized by law in the prosecution of the inquiry pending before said Commission entitled, 'In the Matter of Fireman's Fund Indemnity Company, a corporation, Docket No. 6310,' or an examiner subsequent hereto designated by it for such purposes, to give evidence and testimony at the aforesaid time and place touching matters brought in question by the complaint of the Federal Trade Commission against Fireman's Fund Indemnity Company, a corporation, and the answer thereto, to then and there produce the documentary evidence identified and described in a subpoena issued by the said Commission, on September 22, 1955, and already served upon said James F. Crafts, and which the said James F. Crafts has not produced, and to answer at said time and place every question relevant and material to said proceeding and necessary and proper to the conduct thereof and to attend before said Examiner of the Federal Trade Commission from day to day until his examination shall have been completed.

"It Is Further Ordered: That this Order and its effectiveness be and the same is hereby stayed for the time permitted by law for an appeal therefrom, and if such appeal is filed, thereafter until final determination of such appeal."

The subpoena which was thus enforced read:

"United States of America Federal Trade Commission

"Subpoena Duces Tecum

"To Mr. James F. Crafts, Fireman's Fund Indemnity Company, 401 California Street, San Francisco 20, California.

"You are hereby required to appear before J. Earl Cox, a Hearing Examiner of the Federal Trade Commission, at Room 261, U. S. Post Office and Court House, 7th and Mission Streets in the City of San Francisco, California, on the 17th day of October, 1955, at ten o'clock a. m., of that day, to testify at the in-

stance of the Federal Trade Commission in the Matter of Fireman's Fund Indemnity Company, Docket No. 6310, and you are hereby required to bring with you and produce at said time and place the following books, papers, and documents: described in Schedule 'A' attached hereto and incorporated by reference as if fully rewritten herein.

"Fail not at your peril.

"In testimony whereof, the undersigned, a Hearing Examiner of the Federal Trade Commission, has hereunto set his hand and the said Federal Trade Commission has caused its seal to be affixed at Washington, D. C., this 22nd day of September, 1955.

"[Seal]

/s/ J. Earl Cox,
"Hearing Examiner.

"Schedule 'A'

"1. One copy of each form letter, bulletin, circular, folder, brochure, stuffer, newspaper advertisement, magazine advertisement, or other written or printed advertising material which was disseminated by respondent Fireman's Fund Indemnity Company (hereinafter described in this Schedule 'A' as respondent) to the general public, or to its employees or agents for dissemination to the general public or which was disseminated to the general public by any person, partnership, or corporation with the permission of, request of, order by, or under the terms of any contract with the respondent from March 1, 1954, to date, which advertised, described, or related to any of the accident and health insurance policies named in the complaint or any policies issued by the respondent since March 1, 1954, as substitutes or modifications for such policies.

"2. All contracts, memorandums of agreement, or correspondence between respondent, its officers, agents, employees, or contractors, or any records, books of accounts, or verified summaries thereof which have reference to the following listed advertisements and which show on a state by state basis volume of dissemination of such advertisements by respondent to the general public or to its

agents for redissemination to the general public during the years 1953 and 1954.

"1. Form letter of A & H No. 2.

"2. Form letter of A & H No. 7.

"3. Form letter of A & H No. 9.

"4. Form letter of A & H No. 10.

"5. Circular bearing form No. A & H 4800.

"6. Postcard bearing form No. A & H 4800–A.

"7. Circular bearing form No. A & H 4801.

"8. Postcard bearing form No. A & H 4801–A.

"9. Circular bearing form No. A & H 4803.

"10. Postcard bearing form No. A & H 4803–A.

"11. Pamphlet bearing form No. A & H 4804.

"12. Pamphlet bearing form No. A & H 4807.

"3. One specimen copy of each accident and health insurance policy issued by respondent since March 1, 1954, as a substitute or modification for any of the accident and health insurance policies named in the complaint.

"4. Original books, records, or accounts of the respondent, or verified summaries thereof, showing: the dollar volume of the premium receipts received by it from insureds residing in each of the several states of the United States and in the District of Columbia during the years 1953 and 1954 to whom respondent has issued during those years one or more of the following listed policies on a family or group basis; or the total number of such policies issued by respondent during the years 1953 and 1954 in each of the several states of the United States and the District of Columbia:

"1. The Basic Equity Accident Policy (No. BA).

"2. The Basic Income Equity Accident Policy (No. BAI).

"3. The Basic Equity Life and Limb Accident Policy (No. BAL).

"4. The Basic Health Policy (No. BHP).

"5. The Budget Hospital and Medical Policy (No. GMA).

"6. The Hospital Nurses and Expense Policy (No. HNE).

"7. Hospital and Medical Policy (No. IMH).

"8. Polio Policy (No. PS).

"[Endorsed]: Filed October 18, 1955."

The complaint in the original proceeding is of extremely broad scope:

"United States of America Before
 Federal Trade Commission
 Docket No. 6310

"In the Matter of:

Fireman's Fund Indemnity Company, a Corporation

"Complaint

"Pursuant to the provisions of the Federal Trade Commission Act, as that Act is applicable to the business of insurance under the provisions of Public Law 15, 79th Congress (Title 15, U.S.Code, Sections 1011 to 1015, inclusive), and by virtue of the authority vested in it by said Act, the Federal Trade Commission, having reason to believe that Fireman's Fund Indemnity Company, a corporation, hereinafter referred to as respondent, has violated the provisions of said Act, and it appearing to the Commission that a proceeding by it in respect thereof would be in the public interest, hereby issues its complaint, stating its charges in that respect as follows:

"Paragraph One: Respondent, Fireman's Fund Indemnity Company, is a corporation, duly organized, existing and doing business under and by virtue of the laws of the State of California, with its office and principal place of business located at 410 California Street, San Francisco, California.

"Paragraph Two: Respondent is now, and for more than two years last past has been, engaged as an insurer in the business of insurance in commerce, as 'commerce' is defined in the Federal Trade Commission Act, by entering into insurance contracts with insureds located in various States of the United States in which the business of insurance is not regulated by state law to the extent of regulating the practices of respondent alleged in this complaint to be illegal. Respondent maintains, and at all times mentioned herein has maintained, a substantial course of trade in said insurance policies in commerce between and among the several States of the United States.

"Respondent, during the two years last past, has sold insurance indemnification in a variety of policies, among which are the following:

"1. The Basic Equity Accident Policy (No. BA).

"2. The Basic Income Equity Accident Policy (No. BAI).

"3. The Basic Equity Life and Limb Accident Policy (No. BAL).

"4. The Basic Health Policy (No. BHP).

"5. The Budget Hospital and Medical Policy (No. GMA).

"6. The Hospital Nurses and Expense Policy (No. HNE).

"7. Hospital and Medical Policy (No. IHM).

"8. Polio Policy (No. PS).

"Paragraph Three: Respondent is licensed, as provided by the respective State laws, to engage in the business of insurance, as heretofore generally described, in all of the forty-eight States of the United States and the District of Columbia.

"Paragraph Four: In the course and conduct of its aforesaid business, respondent, during the two years last past, disseminated, and caused to be disseminated, in the form of printed and written matter, false, misleading and deceptive advertising statements concerning the terms and provisions of its contracts of insurance, as reflected by policies as aforesaid. These statements were disseminated by letters, bulletins, circulars, etc., through the United States mail and by other means; or through its agents in commerce, between and among the various States of the United States. The purpose and effect of these statements

was and is to induce members of the public to become insured by the respondent under the terms and provisions of the policies advertised.

"Paragraph Five: In the course and conduct of its said business in said commerce, as aforesaid, the respondent has disseminated, among others of similar import and meaning, not herein set out, advertisements relating to its said policies containing the statements hereinafter set forth:

"1. 'Available to Males ages 18–54 . . . Females 18–54 . . . Renewable to age 70.'

"2. 'A Perfect Combination for Full Coverage Disability Insurance.'

" 'Let Accident and Health Insurance Protect Your Income as Fire Insurance Protects Your Home.'

" 'Adequate Sickness Protection Combined With Sound Accident Insurance.'

" 'Basic Coverages
" 'Hospital Confinement cases:
" 'Benefits Plan A
" '1. Hospital room and board for a period not exceeding 100 days for any one disease or injury,
" 'Adults, per day up to..$ 5.00
" 'Children, per day up to ................ 4.00
" '2. Actual expense incurred for operating room, anaesthesia, anaesthetist's fee, drugs, dressings, diagnostic X-ray and laboratory examinations, up to an aggregate maximum of............. 100.00
" 'Ambulance Expense:
" 'Transportation to or from the hospital, up to ........... 15.00'
" 'Optional Coverages
" 'Surgical Operation Expense:
" 'Whether at hospital, doctor's office or home, schedule up to ......................$250.00
" 'Housewives and Unemployed Females .................. 187.50
" 'Doctor's Visits During Hospital Confinement

" 'In non-surgical cases, reimbursement will be made for physician's fees up to a maximum of 100 days for each disease or injury, per day up to ...................... 3.00'

"4. 'Loss of Business Time Weekly Income up to 52 Weeks

" 'Confining Illness Coverage from first day or with waiting period of 7, 14, 21 or 28 days.'

"Paragraph Six: Through the use of such statements and representations, and others of similar import and meaning, not specifically set out herein, the respondent represents and has represented directly or by implication, with respect to said policies of insurance, as follows:

"1. That the policies providing indemnification against loss caused by accident or sickness may be continued at the option of the insured to a specific age or for life as long as the insured makes such premium payments within the time and in the amounts as are required by the terms of the policy.

"2. That complete indemnification is provided for any or all sicknesses, illnesses or accidents suffered by the insured.

"3. (a) That indemnification is provided in the form of cash benefits for the payment of hospital room and board at the rate of $5.00 per day for a period not to exceed 100 days for any one disease or injury which may be suffered by the insured.

"(b) That indemnification in the form of cash benefits in an amount up to $250.-00 is provided for surgical expense incurred by the insured as a result of illness or injury.

"(c) That indemnification is provided for doctors' visits in non-surgical cases during hospital confinement at the rate of $3.00 per day for a maximum 100 days for each sickness or injury suffered by the insured.

"4. That indemnification is provided for any confining sickness which may be

suffered by the insured during the policy term from the first day of such sickness or after a waiting period of 7, 14, 21, or 28 days as the policy may prescribe.

"Paragraph Seven: The aforesaid statements and representations are false, misleading and deceptive. In truth and in fact:

"1. Contrary to the statements made in paragraph 1 of Paragraph Five, respondent's policies may not be renewed at the option of the insured until the age of 70 years or any other specific age by the timely payment of premiums in the amounts required by such policies. On the contrary, respondent's policies provide, in effect, that they are subject to cancellation by the respondent at any time for any reason or for no reason at all.

"2. Contrary to the statement made in subparagraph 2 of Paragraph Five concerning respondent's Basic Health Policy and Basic Equity Accident Policy, the insured is not provided with complete indemnification by such policies against any loss which may be incurred by reason of any or all sicknesses or accidents. For example, Respondent's Basic Health Policy provides, (a) in effect, that no cash benefits are payment for any loss due to sickness the cause of which is traceable to a condition existing prior to or within 15 days after the effective date of the policy; (b) any loss due to pregnancy, childbirth or miscarriage; and (c) suicide or any attempt threat, death, disability or other loss caused or contributed to, by disease or infection (except pyogenia infection) or injury sustained by the insured while in or on any aircraft or other device for air travel. Total disability benefits are only provided if the disability wholly and continuously disables the insured and prevents the insured from performing each and every duty pertaining to his occupation. Further, such total disability must occur within 30 days of the date of the accident.

"3. Contrary to the statements made in subparagraph 3 of Paragraph Five:

"(a) Respondent's Hospital and Medical Expense Policy (as referred to in sub-paragraph 3(1) of Paragraph Five) does not provide indemnification for hospital room and board for a period not to exceed 100 days for any one disease or injury. On the contrary, such policy does not cover losses resulting from any illness the cause of which is traceable to a condition existing prior to or within 30 days of the effective date of the policy. Further, the policy does not provide for the payment of cash benefits for losses resulting from insanity, pregnancy or childbirth, or any condition resulting therefrom; intentional self-inflicted injuries; or operations for removal of tonsils or adenoids, or both, upon children up to the age of 18; unless the policy has been in effect for at least 12 consecutive months. Also, it is to be noted that the policy provides that benefits payable thereunder shall be reduced 25% when the insured reaches 60 years of age and 50% when the insured reaches 65 years of age.

"(b) Respondent's Hospital and Medical Expense Policy does not cover any surgical expense which may be suffered by the insured by reason of sickness or accident in all cases to a maximum of $250.00. The surgical benefits provided by the policy, if payable at all, are limited to the maximum amounts stated in the schedule of operations (Rider Form MSE) contained in the policy. This schedule lists 114 different types of operations. A maximum of $250.00 will be payable for surgical fees for only four of these types of operations. A maximum of $75.00 or less is provided for 90 of the listed types of operations.

"(c) Respondent's Hospital and Medical Policy does not provide indemnification for doctors' visits to the insured during hospital confinement in all non-surgical cases. Instead, such policy excludes indemnification for this expense in many instances for the reasons previously stated in subsection (a) of this section.

"4. Contrary to the statements contained in subparagraph 4 of Paragraph Five (which refer to respondent's Basic Health Policy) indemnification is not provided for the first day of any illness which may be contracted by the insured

during the policy term. Instead, such policy excludes payment for losses resulting from any sickness the cause of which originates on or prior to fifteen days after the effective date of the policy.

"Paragraph Eight: The use by the respondent of the aforesaid false and misleading statements and representations with respect to the terms and conditions of its said policies and its failure to reveal the limitations of said coverage found in said policies have had and now have the tendency and capacity to mislead and deceive and have misled and deceived a substantial portion of the purchasing public into the erroneous and mistaken belief that the aforesaid statements and representations were and are true and to induce said portion of the purchasing public to purchase insurance coverage from the respondent because of said erroneous and mistaken belief.

"The aforesaid acts and practices of respondent, as herein alleged, are all to the prejudice and injury of the public and constitute unfair and deceptive acts and practices in commerce within the intent and meaning of the Federal Trade Commission Act [15 U.S.C.A. § 41 et seq.].

"Wherefore, the Premises Considered, the Federal Trade Commission, on this 11th day of March, A.D.1955, issues its complaint against said respondent."

Crafts appeals, claiming it is not shown that the proceeding lies within the power of the Commission and that the testimony and exhibits demanded are therefore not shown to be relevant to any inquiry within the jurisdiction of the administrative body to conduct. No claim of personal privilege is made.

The proceeding raised the question of whether Congress had not totally proscribed action by the Commission in the insurance field, albeit trafficking across state lines in insurance now constitutes interstate commerce.[1] It must be determined at the outset whether the demand of the subpoena related specifically to any books, documents or other papers, the production of which the Commission had a right to require from this corporation or its officers, as being within the closely circumscribed area which Congress may have left remaining for Commission action as to insurance.

The two bases for the claim of the Commission that the order should be upheld cut diagonally across these fields.

First, it is said that the District Court had no authority to determine whether the Commission was empowered to bring the proceeding and issue the subpoena, and, second, it is argued that the only question involved is one of "coverage," which must be left to the discretion of the Commission. It will be demonstrated that neither of these contentions is sound. As paraphrased by the agency brief, the trial court took the position that "the subpoena must be enforced without deciding whether the appellant is covered by the statute, provided the subpoena is relevant to a legitimate field of inquiry and is otherwise reasonable." But it must be pointed out that even this test, so loosely defined, was not really employed by the trial court in the instant case.

The present proceeding to enforce the subpoena was frankly initiated in order to gain complete disclosure of all records by Fireman's Fund Indemnity Company without settling the question of the authority of the Commission to investigate that company in their present proceeding. Indeed, as noted above, the claim was made and was apparently accepted by the trial judge that the District Court had no jurisdiction to consider whether the Commission had power to investigate this particular corporation at all. It is urged by the agency that this Court accept the interpretation of the Commission of its own powers for the purpose of making the investigation and that the breadth thereof can be reviewed when the final order in the main proceeding is attacked. We

1. United States v. South-Eastern Underwriters Association, 322 U.S. 533, 64 S. Ct. 1162, 88 L.Ed. 1440, rehearing denied 323 U.S. 811, 65 S.Ct. 26, 89 L.Ed. 646.

reject this limitation upon the jurisdiction of the trial court.

■ It cannot be too often reiterated that the attempt to enforce an administrative subpoena initiates a case or controversy.[2] All questions relating to jurisdiction of the court, authority of the administrative body, reasonableness of the demand under all the circumstances, with regard for due process and protection of individual rights, and relevancy of the testimony and documents demanded are justiciable. Since the Commission was asking for relief of an affirmative nature, it was incumbent upon that agency to establish affirmatively its legal power to act in the field, among other essentials. The postulate upon which any jurisdiction to act in the field of interstate commerce by the Commission depends is that Congress had not explicitly excluded such action by specific statute. The power of Congress to exclude completely such action under the Commerce Clause of the Federal Constitution cannot be denied. If the Commission were then precluded from regulation by Congress, it would have no power to act and the court would be bound so to declare.

The jurisdiction of the District Court and the extent of the area denied by Congress to the Commission in regulation of insurance in interstate commerce are the cardinal questions here. Therefore, the decision here is not affected by the principles set forth in cases recently decided by this Court. In these decisions, the element of personal privilege, the right of privacy, the right of a person to be secure from a general search and seizure and not to be required to be a witness against oneself as constitutionally guaranteed were discussed.[3] Here, as noted above, no claim of any personal privilege or right is

2. Interstate Commerce Commission v. Brimson, 154 U.S. 447, 489, 14 S.Ct. 1125, 38 L.Ed. 1047.

3. These decisions turn on the propriety of judicial enforcement of subpoenas issued by various administrative agencies in the light of claims of personal privilege or privacy by those directly involved or by third parties to the proceeding. In Boren v. Tucker, 9 Cir., 239 F.2d 767, it was held, so far as is important here, that the subpoena was reasonable in that the evidence sought was sufficiently material and relevant to the tax liability of the defendant taxpayers. In Chapman v. Maren Elwood College, 9 Cir., 225 F.2d 230, the denial of enforcement of a subpoena issued by the Veterans Administration was affirmed, the subpoena was found, on the facts, to reach unreasonably far back in time.

Three cases involve the rights of third persons to protection where the administrative agency is authorized to investigate another directly. The question presented is whether a general, rather than specific, demand allows the third person to raise questions of personal privilege and avoid disclosure which might tend to incriminate him. Enforcement of a Civil Aeronautics Board subpoena was reversed and the case remanded in Hermann v. Civil Aeronautics Board, 9 Cir., 237 F.2d 359, 363, in part because the District Court failed to pass upon privilege asserted by third parties to the proceeding in behalf of documents relating "entirely to their personal affairs, such as their income tax reports." A similar result obtained in Local 174, International Brotherhood of Teamsters, etc. v. United States, 9 Cir., 240 F.2d 387, where the subpoena issued by the Internal Revenue Service to the Local, a third party to the tax investigation of another, was so broad on its face as to compel a holding that the District Court had not given consideration to the right of privacy of the Local. Likewise, this Court, in Hubner v. Tucker, 9 Cir., No. 14,704, filed January 30, 1957, set aside a contempt order imposed against defendant, a third party to a tax investigation for failure to obey the subpoena issued by the Internal Revenue Service, and remanded the case. It was held that the blanket demand, by its very breadth, precluded the defendant from effectively raising the defense of unlawful search and seizure and the privilege against self-incrimination.

It should be noted that, in all these cases, there was no question raised as to the broad legal authority of the various agencies involved to issue subpoenas, and to have them enforced: "coverage" was not an issue in any of them. Rather, the issues raised in these enforcement proceedings concern more particular problems, such as what may be subpoenaed, from whom, and in what manner.

made. The issue is essentially one of authority to determine jurisdictional questions.

There are three separate questions in this case which were before the trial court. First, did the Federal Trade Commission have any authority to demand production of any papers whatsoever from Fireman's Fund Indemnity Company? Second, has the Commission any power over the subject matter of the inquiry? Third, was the subpoena definite enough to show all the material demanded was relevant to any inquiry which the Commission was empowered to conduct?

The question of whether either Indemnity or Crafts was covered by an act, regulation or statute personally was really not involved or, perhaps we may rather say, was entirely a dependent proposition which could only be solved by a determination of whether Congress had precluded the Commission from acting in the particular field. The trial court refused to consider the scope of authority of the Commission, the relevancy of the testimony or documents to any inquiry which the agency

had the authority to conduct and the arbitrary nature of the demand considering that Congress may have prohibited action or at least closely circumscribed action in this field of interstate commerce by the Commission.

But at the threshold of any inquiry a District Court must consider not only its own jurisdiction, but also the authority of any agency to act which seeks relief before it.[4] The idea that a fiat of an administrative agency that it possesses authority to act in a particular field is sacrosanct is illusory. In certain statutes, Congress has permitted an agency to determine conclusively whether a certain person or state of facts comes within the orbit of its administrative power.[5] But those instances are not analogous to the instant proceeding.

Here the trial court places an imprimatur upon each demand of the subpoena without any consideration of the limitations upon the power of the agency to act. However, Congress had passed an act specifically stating its position with regard to the business of insurance, which reads in part:

4. Jones v. Securities and Exchange Commission, 298 U.S. 1, 56 S.Ct. 654, 80 L. Ed. 1015. A leading "coverage" case indicates that evidence sought by subpoena cannot be "plainly incompetent or irrelevant to any lawful purpose" of the agency. Endicott Johnson Corporation v. Perkins, 317 U.S. 501, 509, 63 S.Ct. 339, 343, 87 L.Ed. 424. As the District Court stated in Application of Barnes, 116 F.Supp. 464, 467, ultimately affirmed sub. nom. United States v. Minker, 350 U.S. 179, 76 S.Ct. 281, 100 L. Ed. 185, "Subpenas should not issue upon hit or miss legal grounds." See also cases where enforcement was denied on analogous legal grounds: Cudahy Packing Co. v. Holland, 315 U.S. 357, 62 S.Ct. 651, 86 L.Ed. 895 (improper delegation of subpoena power); cf. Ellis v. Interstate Commerce Commission, 237 U.S. 434, 35 S.Ct. 645, 59 L.Ed. 103; Harriman v. Interstate Commerce Commission, 211 U.S. 407, 29 S.Ct. 115, 53 L. Ed. 253 (witnesses not required to answer questions outside the scope of the statutory authority of the Commission).

5. See, for example, Endicott Johnson Corporation v. Perkins, 317 U.S. 501, 63 S.

Ct. 339, 87 L.Ed. 424, so holding as to the Walsh-Healy Public Contracts Act, 41 U.S.C.A. § 38, and Tobin v. Banks and Rumbaugh, 5 Cir., 201 F.2d 223, certiorari denied 345 U.S. 942, 73 S.Ct. 832, 97 L.Ed. 1368, so holding as to the Fair Labor Standards Act, § 9, 29 U.S.C.A. § 209.

The trial court was impressed with the rationale of these cases and treated the question raised in the instant case as one of "coverage." The government has cited a wealth of cases on this point, which have properly treated "coverage" questions following the same line of reasoning. These are not applicable here. In each of them Congress had vested an agency with regulatory power in a broad field, and the particular question was whether some individual or entity was within or without the field. The agency was given primary jurisdiction to reach a tentative conclusion and subpoenaed records to prove the fact of coverage. But here Congress has severely circumscribed, if not destroyed the power of any agency to enter the field, if the regulation by a particular state is sufficiently comprehensive.

*"Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That the Congress hereby declares that the continued regulation and taxation by the several States of the business of insurance is in the public interest, and that silence on the part of the Congress shall not be construed to impose any barrier to the regulation or taxation of such business by the several States.

"Sec. 2.(a) The business of insurance, and every person engaged therein, shall be subject to the laws of the several States which relate to the regulation or taxation of such business.

"(b) No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance, or which imposes a fee or tax upon such business, unless such Act specifically related to the business of insurance: *Provided,* That after June 30, 1948, the Act of July 2, 1890, as amended, known as the Sherman Act, and the Act of October 15, 1914, as amended, known as the Clayton Act, and the Act of September 26, 1914, known as the Federal Trade Commission Act, as amended, shall be applicable to the business of insurance to the extent that such business is not regulated by State law."

McCarran-Ferguson Insurance Regulation Act, 59 Stat. 33, 15 U.S.C.A. §§ 1011–1012.

In the face of this statute, the Commission has decided by a vote of three to two that it has a broad and uncontrolled power to regulate the business of insurance.[6] This result seemingly was reached by rationalization from the terms of the statute. However, it is not the intention to attempt to construe the statute because the demand of the subpoena is so broad and general that such a holding is not compelled here.

The appellant Crafts, contrary to the Commission, claims that California is the state of origin of the company and that the operations of the company with regard to advertising are completely regulated by the law of that state.[7] It is urged that California has the complete control of the existence of the corporation and may revoke its charter for violations of the laws, even if the particular act may have occurred in another state, federal district or foreign country.[8] Nor, it is claimed, is this a dry letter of the enactment, since the proper officers do enforce such regulations upon violations outside the state.[9] Furthermore, it is said, practically every state in the Union and the District of Columbia have statutes which regulate and control the advertising of the persons and corporations, domestic or foreign, doing insurance business in the state or district.[10] It is urged upon us that these are purely questions of law and that therefore it is incumbent upon this Court to decide now just what are the limitations, if any, upon the power of the Commission. We hold it improper for us to rule upon the questions thus presented in this ancillary case except insofar as these may affect breadth of the demand of the subpoena.

██ That there are limitations upon the power of the Commission in this

---

6. In the Matter of American Hospital and Life Insurance Company, F.T.C. Docket No. 6237, decided April 24, 1956.

7. Cal.Stat., Insurance Code, West, 1956, §§ 780, 781.

8. Cal.Stat., Insurance Code, West, 1956, §§ 704, 783.5.

9. Appellant draws our attention to the pending case of Foster v. McConnell, Docket No. 422572, in Superior Court at San Francisco, in which just this application of the statutes is being tried.

10. Almost four-fifths of the states have adopted, with minor variations, the so-called "Model Act," which was drafted by the National Association of State Insurance Commissioners and provided for the regulation of trade practices. See R.C.W. §§ 48.30.010–48.30.250. The remaining states all have statutory provisions regulating to various degrees deceptive representations or advertising.

field is beyond all doubt. It is apparently conceded by everyone that the agency had no power to inquire into the advertising of this corporation in the State of California. Indeed, it is stated that some such limitation was placed upon the claim to discovery by the trial examiner and affirmed by the Commission. It has also been stated by counsel that the agency has no interest in discovery as to this area. But this Court cannot consider this as a supposition or admission. The trial court enforced the subpoena as it read without qualification or exception. This was error.

The entire complaint in the proceeding is predicated upon the overriding authority of the Commission to regulate and punish advertising in the business of insurance which may affect interstate aspects thereof in accordance with the ruling by that body, split three to two.[11]

When the Congress passes an act which is intended to cure an evil legislatively designated and defined, the courts will not circumscribe the sphere of action of the agency. Here the Commission acts within the scope of power conferred by a general statute which purports to confer authority "to prevent * * * corporations * * * from using unfair methods of competition in commerce and unfair or deceptive acts or practices in commerce."[12] This Act covers a broad field and unquestionably sets out a legislative purpose of great public importance. As such, the legislation has been upheld and broadly enforced by the courts. Yet even the Commission will not contend that this legislation is of universal application to all corporations, persons and partnerships in the United States. Indeed, before the decision of the Supreme Court of the United States in United States v. South-Eastern Underwriters Association, 322 U.S. 533, 64 S.Ct. 1162, 88 L.Ed 1440, the Commission had never attempted to exercise this authority against insurance companies. If such an attempt had been made before that time, surely no claim could have been made that an insurance company could not resist the investigation at the outset on ground that the Commission had no jurisdiction. This consideration highlights the proposition that the primary question for a court here is jurisdictional and does not involve coverage.[13]

This point serves to distinguish all legislation and all decisions thereon where the particular entity may or may not be as a matter of fact within the general sweep of power conferred.[14] Where Congress has conferred broad authority upon an agency to exercise regulatory power over a legislative classification such as interstate commerce, the question as to whether the entity or person subpoenaed is within the classification and thus subject to administrative control is one of "coverage." As it is a question of fact, the agency usually has complete power of determination, and the courts cannot interfere. As to many fields, the Commission has such unhampered power in regulation of interstate commerce.

Here Congress had plenary power to refuse to occupy the field of regulation of insurance in interstate commerce. Whether the refusal was complete with a clause of re-entry left for future contingency or whether a considerable area was left for present regulation by the Commission, we do not attempt presently to decide. But the determination involves a question of law. The jurisdiction of the Commission certainly was drastically circumscribed in this field in any event. How far the prohibition has gone is dependent upon a construction of this act of Congress and the statutes of the several individual states regulating insurance. It may be conceived the actual practice in insurance

11. In the Matter of American Hospital and Life Insurance Company, F.T.C. Docket No. 6237, decided April 24, 1956.

12. Federal Trade Commission Act, § 5(a) (6), as amended July 14, 1952, 66 Stat. 632, 15 U.S.C.A. § 45(a) (6).

13. See cases at Note 4, supra.

14. See cases at Note 5, supra.

regulations of a particular state may become pertinent eventually, but such matter will still relate to jurisdiction of the Commission and not to "coverage."

 Patently, the power of the Commission to act at all is based upon the exception contained in a proviso.[15] The distinct purpose of Congress, emphatically set out in the act, was to abandon the field of regulation to the states, where the power traditionally lay.[16] Judicial knowledge may be taken of the fact that, in view of the responsibility which lay on the individual states to regulate this business when by hypothesis there could be no federal regulation,[17] the field was well covered both in the states of origin of the corporations and in the states of dissemination of advertising and of written policies. In the time zone which Congress deliberately created for the purpose,[18] state legislation to fill lacunae in regulation was widely enacted, as was the intention. A major portion controls the corporation in the place of its incorporation or where it has its principal place of business. But it must not be forgotten that many states scrupulously control the media of dissemination of policies, such as brokers, agents and advertising of foreign corporations engaged in the insurance business within the territorial jurisdiction thereof. In initiating a scheme of regulation of strictly interstate negotiation and sale of insurance policies, it might have been well for the Commission to establish as to two different states what the limits of such business are. Of course, this Court is not at-tempting to set boundaries to the jurisdiction of the Commission, but rather to seek a solution for the problem at bar.

The trial court should then have considered the second proposition. It should have found affirmatively upon the question whether the broad demand for the testimony and documents covering the whole field of intrastate operation in California[19] and that in other states, which respectively attempted to legislate with regard to advertising in the field of insurance, was arbitrary and unreasonable or not.

The decisive point, however, encompasses all these phases. There was no examination by the District Court of the relevancy and pertinence of the testimony and documents demanded to any matter into which the Commission was empowered by statute to inquire.[20] Section 6 of the Administrative Procedure Act provides in part:

"Agency subpenas authorized by law shall be issued to any party upon request and, as may be required by rules of procedure, upon a statement or showing of general relevance and reasonable scope of the evidence sought. Upon contest the court shall sustain any such subpena or similar process or demand to the extent that it is found to be in accordance with law * * *." *Administrative Procedure Act, § 6(c), 60 Stat. 240, 5 U.S.C.A. § 1005(c).*

It may be incumbent upon the trial court to place limitation upon the subpoena. So only could the demand be

15. McCarran-Ferguson Insurance Regulation Act, § 2(b), as amended 61 Stat. 448, 15 U.S.C.A. § 1012(b), quoted in text, supra.

16. McCarran-Ferguson Insurance Regulation Act, § 1, 59 Stat. 33, 15 U.S.C.A. § 1011, quoted in text, supra.

17. Before the decision in United States v. South-Eastern Underwriters Association, 322 U.S. 533, 64 S.Ct. 1162, 88 L.Ed. 1440, rehearing denied 323 U.S. 811, 65 S.Ct. 26, 89 L.Ed. 646, it had been consistently held for many years that insurance was not "commerce." Paul v. State of Virginia, 8 Wall. 168, 75 U.S. 168, 183, 19 L.Ed. 357; New York Life Insurance Co. v. Deer Lodge County, 231 U.S. 495, 34 S.Ct. 167, 58 L.Ed. 332.

18. McCarran-Ferguson Insurance Regulation Act, § 2(b), as amended, 61 Stat. 448, 15 U.S.C.A. § 1012(b), quoted in text, supra.

19. See Federal Trade Commission v. American Tobacco Co., 264 U.S. 298, 307, 44 S.Ct. 336, 68 L.Ed. 696.

20. Federal Trade Commission Act, § 9, 38 Stat. 722, 15 U.S.C.A. § 49.

sustained "to the extent that it is found to be in accordance with law." This Court is of the opinion that the subpoena was so broad on its face and the implications of the complaint upon which it was based are so farreaching that it would have been almost impossible to frame appropriate phrases of limitation. If the subpoena be enforced without regard to the relevance of the testimony sought to the areas over which the Commission has established jurisdiction, the ruling would not only be unfair to the company, but could be quoted as a precedent for an unlimited authority for investigation and discovery in the field of insurance, whether intrastate or interstate. The agency could have limited the subpoena itself so as to have raised the question of its power by particularizing the demand. If the demand had been confined to records relevant to interstate commerce with another single state such as Montana, where there is probably the least regulation of advertising by a foreign corporation in the insurance area,[21] a much closer question would have been presented. But decisions as to relevance as well as those as to reasonable or arbitrary exercise of power must have bases in facts.

We hold that not only did the District Court have jurisdiction to decide, but also that it is required to decide whether the statutes have withdrawn the power from the Commission to regulate the particular area of interstate commerce in insurance solely when the court is moved to enforce a subpoena so definite in demand for specific books or papers that the scope of authority may be defined. Since this present subpoena demanded in mass all books, papers and records of the Indemnity Company including those relating to the intrastate business of that company in California, wherein Fireman's Fund was incorporated, the order of enforcement was too broad. While it may be the duty of the court to enforce a subpoena insofar as the demand be "in accordance with law,"[22] here the phraseology was such that the court had no means of segregation of items, if any, over which the Commission had jurisdiction from those as to which Congress had explicitly denied them authority. Hale v. Henkel, 201 U.S. 43, 26 S.Ct. 370, 50 L.Ed. 652; Federal Trade Commission v. American Tobacco Company, 264 U.S. 298, 44 S.Ct. 336, 68 L.Ed. 696. The subpoena in the instant case is not sufficient to present the question of jurisdiction, if any, remaining to the Commission. The proceeding should be dismissed.

Reversed.

21. And, even in Montana, there is general legislation governing false statements in advertising. Montana Revised Code, § 94–1819, which would seem to be specifically applicable to "any insurance company organized in this state, or in any other state." Montana Revised Code, § 40–1106.

22. Administrative Procedure Act, § 6(c), 5 U.S.C.A. § 1005(c), quoted supra.