The NEW ORLEANS STEAMSHIP ASSOCIATION, Plaintiff-Appellant,

v.

PLAQUEMINES PORT HARBOR AND TERMINAL DISTRICT, Defendant-Appellee.

No. 87–3068
Summary Calendar.

United States Court of Appeals, Fifth Circuit.

May 19, 1987.

Rehearing Denied June 12, 1987.

---

17. *Public Finance*, 712 F.2d at 221.

18. S.Rep. No. 150, 97th Cong., 1st Sess. 18 (1981).

19. *Id.*

20. *See In re Goeb*, 675 F.2d at 1390; *In re Rimgale*, 669 F.2d at 432–33; *In re Street*, 55 B.R. at 764.

Edward S. Bagley, Terriberry, Carroll & Yancey, New Orleans, La., for plaintiff-appellant.

John M. Binetti, Federal Maritime Comm., Washington, D.C , for amicus-curiae-Federal Maritime Comm.

Louis B. Porterie, Robert E. Fontenelle, Jr., New Orleans, La., Edward J. Sheppard, Dwight Rabuse, Schmeltzer, Aptaker &

Sheppard, Justice Dept., Civil Div., Washington, D.C., for defendant-appellee.

Before POLITZ, WILLIAMS, and JONES, Circuit Judges.

POLITZ, Circuit Judge:

The New Orleans Steamship Association (NOSA) appeals the district court's dismissal of its complaint which sought to enforce an order of the Federal Maritime Commission. The trial court found the complaint moot. Concluding that most of NOSA's complaint is moot and that the remaining portion does not warrant the injunctive relief requested, we affirm.

*Background*

NOSA is a non-profit association of owners, stevedores, and agents of vessels that are common carriers by water in the foreign commerce of the United States calling at the port of New Orleans. The Plaquemines Parish Port, Harbor and Terminal District is coterminous with Plaquemines Parish, Louisiana, and encompasses most of the Mississippi River between New Orleans and the Gulf of Mexico. Every oceangoing vessel serving any port on the Mississippi River must traverse the Plaquemines Port District both inbound and outbound.

Acting pursuant to the Shipping Acts of 1916 and 1984, 46 U.S.C. §§ 801 *et seq.* and 46 U.S.C. §§ 1701 *et seq.*, respectively, the District published a tariff detailing charges for services it furnished. NOSA challenged the tariff as violative of the 1916 Act because of preferential treatment given to non-oceangoing vessels. The matter was heard by an Administrative Law Judge who issued a comprehensive and scholarly Initial Decision on December 30, 1985. The ALJ upheld the Commission's jurisdiction and the essential validity of the tariff, but found certain "allocation of fees amongst users ... unduly discriminatory." The ALJ ordered "that once the decision in this proceeding becomes final the Port will immediately cease and desist assessing the unlawful fees." Both parties took exception to the Initial Decision and the matter was reviewed by the Commission. Subject to certain modifications not relevant herein, on September 16, 1986, the Commission found the imposition of the tariff consistent with the 1984 Act, agreed as to the discriminatory allocation of fees, and adopted the ALJ's ruling.

Immediately upon entry of the Commission's order, NOSA filed the instant action seeking enforcement of the order and an injunction forbidding the District to collect any fees assessed under the tariff. On October 15, 1986, the District filed a revised tariff, eliminating those portions found invalid by the ALJ and the Commission. This revised tariff was formally approved shortly thereafter.

Having remedied the defects in the tariff to the Commission's satisfaction, the District sought dismissal of the complaint, which was based on the prior tariff. The trial court granted the District's motion, opining that insofar as NOSA was seeking an injunction against future assessments the issue was moot, and that, with reference to the requested relief against collection, the Commission's order would be better raised as a defense to a collection suit by the District.

*Analysis*

■ Our analysis begins with a reflection on a basic rule in this area of the law: properly filed tariffs carry a presumption of legality and may be assessed and collected until abrogated by the Commission. *Gilbert Imported Hardwoods, Inc. v. 245 Packages of Guatambu Squares*, 508 F.2d 1116 (5th Cir.1975). This rule emphasizes the policy expressed in both Shipping Acts, and in the law regulating non-maritime carriers through the Interstate Commerce Commission, that clearly defined and certain rates are imperative in the governance of transportation. *Compare Gilbert Imported Hardwoods* and *Southern Pacific Transp. Co. v. San Antonio, Texas*, 748 F.2d 266 (5th Cir.1984). In accordance with that rubric, a disputed tariff may be assessed and collected. If the Commission

eventually declares the tariff illegal, a reparations claim may lie under the Shipping Acts. As the Supreme Court explained in the ICC context:

[W]here there is a dispute about the appropriate rate, the equities favor allowing the carrier's rate to control pending decision by the Commission, since under the Act, the shipper may receive reparation for overpayment while the carrier can never be made whole after underpayment.

*Burlington Northern, Inc. v. United States,* 459 U.S. 131, 141–42, 103 S.Ct. 514, 521, 74 L.Ed.2d 311, 320 (1982), *quoted in Southern Pacific Transportation Co. v. San Antonio, Texas.* That *ratio decidendi* applies as well to cases governed by the Shipping Acts with their similar reparation procedures. 46 U.S.C. §§ 821, 1710.

Notwithstanding the presumption of validity of a tariff and its immediate enforceability pending Commission review, the courts have occasionally enjoined enforcement to prevent apparent irreparable injury. *State of Texas v. Seatrain International, S.A.,* 518 F.2d 175 (5th Cir.1975). Congress recognized and codified that exercise of judicial authority in the 1984 Act, 46 U.S.C. § 1710(h). No such injunction was sought herein.

■ The tariff at issue was assessable and collectible until September 16, 1986, when nullified by the Commission's adoption of the ALJ's order. Until that adoption, the effect of the ALJ's Initial Decision had been suspended by the filing of timely exceptions. 46 C.F.R. § 502.227(4). Effective upon entry, orders of the Commission continue until abated by the Commission, or by a court of competent jurisdiction. 46 U.S.C. §§ 822, 1713(a). Accordingly, from and after September 16, 1986, the District was bound to cease and desist assessing the nullified tariff. That situation appertained until October 15, 1986, when the District filed a revised tariff and again was empowered to assess and collect the tariffs as there published. The revised tariff subsequently passed muster.

*Mootness*

■ The district court found that the filing and approval of the October 15, 1986 tariff rendered NOSA's claim for injunctive relief moot. It is axiomatic that a claim is moot when it no longer presents a live controversy, or the parties lack a legally cognizable interest in the outcome. *Murphy v. Hunt,* 455 U.S. 478, 102 S.Ct. 1181, 71 L.Ed.2d 353 (1982). The case at bar falls squarely within those parameters as relates to an injunction against future assessments by the District. The only assessments violative of the Shipping Acts and the Commission's ruling would be those made between September 16, 1986 and October 15, 1986, the period after nullification of the first tariff and before publication of the revised tariff. Assessments for that period presumptively were made at that time. There is no allegation that the District is deferring those assessments. Nor is there any contention that assessments post-October 15, 1986 should be enjoined. Accordingly, we fully agree with the district court that the request for an injunction against future assessments is moot.

■ That conclusion does not necessarily dispose of this appeal, however, for a case may be moot as to some or most issues but viable as to others. *Florida Bd. of Business Regulations v. N.L.R.B.,* 605 F.2d 916 (5th Cir.1979). NOSA also seeks an injunction against the District to forestall the collection of any tariffs illegally assessed, *viz.,* those assessed during the month's lapse between valid tariffs. Accepting for present purposes the allegation that illegal assessments were made and were not then paid, it is possible that the District might attempt their collection in violation of the Commission's ruling. The new tariff did not render moot NOSA's interest in this aspect of its request for injunctive relief, since the potential for such violation, although remote, still exists. We therefore must determine whether NOSA's claim for an injunction against collection is adequate under the law. Finding that it is not, we conclude that we may

affirm the district court's dismissal of NOSA's complaint.

Both the 1916[1] and 1984[2] Shipping Acts provide for federal court intervention at the request of the Commission, Attorney General, or any injured party, if an order issued by the Commission has been violated. Upon finding that such a violation has occurred or is occurring, a district court having jurisdiction over the parties is statutorily mandated to "enforce obedience thereto by a writ of injunction or other proper process...." 46 U.S.C. § 828; *see also* § 1713(c). When a violation is found, the district court must act to enforce the Commission's orders by whatever means considered "proper." *Cf. Federal Maritime Commission v. Port of Seattle,* 521 F.2d 431 (9th Cir.1975).

The statutes establish a tripartite inquiry: (1) is there a violation; (2) is the order valid; and (3) what is the proper relief? The instant inquiry terminates with the first question—is there a violation? No current, justiciable violation of a Commission order is alleged. Although assessments may have been made during the lapse period, there is nothing in the record before us to suggest that the District is presently undertaking, or is likely to undertake steps to collect any illegally assessed charges. Such conduct must be established before injunctive relief may be considered. We agree with the district court that the heavy hand of injunctive relief would not be "proper" in this case.

[7] By separate motion, filed post appeal, the District invokes 28 U.S.C. §§ 1912, 1927 and Fed.R.App.P. 38 and seeks the imposition of sanctions against NOSA and its counsel. We do not deem

the appeal frivolous, and that motion is DENIED.

For the foregoing reasons we conclude that the district court properly declined the petition for injunctive relief, and its judgment is AFFIRMED.

---

1.  46 U.S.C. § 828 provides:
    In case of violation of any order of the Federal Maritime Commission under this Act, the Commission, or any party injured by such violation, or the Attorney General, may apply to a district court having jurisdiction of the parties; and if, after hearing, the court determines that the order was regularly made and duly issued, it shall enforce obedience thereto by a writ of injunction or other proper process, mandatory or otherwise.

2.  46 U.S.C. § 1713(c) provides:

In case of violation of an order of the Commission, or for failure to comply with a Commission subpoena, the Attorney General, at the request of the Commission, or any party injured by the violation, may seek enforcement by a United States district court having jurisdiction over the parties. If, after hearing, the court determines that the order was properly made and duly issued, it shall enforce the order by an appropriate injunction or other process, mandatory or otherwise.